Concurring opinion filed by Circuit Judge Moore.
Prost, Chief Judge.
The nine individual appellants in this consolidated appeal are veterans or spouses of veterans who have appealed the Department of Veterans Affairs' ("VA") denial of their claims for service-connected disability benefits. Based on delays that have occurred in each of their cases, Appellants petitioned for writs of mandamus, asking the U.S. Court of Appeals for Veterans Claims ("Veterans Court") for relief. The Veterans Court denied the petitions. Although we do not opine as to whether we agree with the Veterans Court's conclusion in each case, we hold that the Veterans Court did not apply the proper standard for evaluating mandamus petitions based on unreasonable delay. Accordingly, we vacate the denial of the *1341 mandamus petitions in certain cases and remand for additional consideration.
I
Veterans are entitled to compensation "[f]or disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war." 38 U.S.C. § 1110 ; see id. § 1121 (wartime death compensation for designated heirs and dependents); id. § 1131 (peacetime disability compensation); id. § 1141 (peacetime death compensation for designated heirs and dependents). "Veteran's disability benefits are nondiscretionary, statutorily mandated benefits," and a veteran is entitled to such benefits if he or she satisfies the eligibility requirements. Cushman v. Shinseki , 576 F.3d 1290, 1298 (Fed. Cir. 2009).
A veteran begins the process of seeking benefits by filing a claim with a VA regional office. If the veteran receives an unfavorable "rating decision" from the regional office (e.g., a denial of a claim for disability benefits), he or she begins the appeal process by filing a Notice of Disagreement. See 38 U.S.C. § 7105(a). Once a Notice of Disagreement is filed,[1] the VA then issues the next document required in the appeal process-the Statement of the Case ("SOC"). On average, the VA takes 500 days to prepare the SOC.[2] Suppl. App. 4095. After receiving the SOC, a veteran may then file a notice of appeal with the BVA, also known as a "Form 9." See 38 C.F.R. § 19.30(b).
Once the veteran files a Form 9, the VA completes a Certification of Appeal. See 38 C.F.R. § 19.35. The certification process appears to take the VA about two and a half hours to complete, on average. J.A. 508. Nonetheless, veterans wait an average of 773 days for the VA to issue the Certification of Appeal, plus an additional 321 days for the VA to transfer the certified appeal to the BVA for docketing. Suppl. App. 4095; see 38 C.F.R. § 19.36. In contrast to preparation of the SOC, for which there is arguably an explanation for some delay, it is unclear to us why this two-and-a-half-hour certification process takes an average of 773 days to complete-and the government has not provided an explanation. And the average 321-day delay that occurs when the VA transfers the certified appeal to the BVA is even more mysterious. The government, again, has not explained the cause of this delay, even though the transfer process appears to consist of simply transferring appellate records.
After these often-significant periods of delay, the BVA will issue its decision. Overall, the average time from the filing of *1342 a Notice of Disagreement to issuance of a BVA decision is over five years. Suppl. App. 4095.
The BVA's decision may then be appealed to the Veterans Court, 38 U.S.C. § 7252(a), and that decision may then be appealed to this court, id. §§ 7252(c), 7292.
II
Appellants, along with eight other veterans, petitioned the Veterans Court to issue writs of mandamus in response to alleged unreasonable delays in each of their cases.[3] Appellants' mandamus petitions are substantially identical. Each broadly discusses the delays experienced by veterans awaiting resolution of their disability benefits claims with the VA. For example, the petitions allege that "[a] veteran whose disability benefits are denied by the VA wait[s], on average, 1448 days from the time the VA denies the veteran's request for benefits to the time that the [BVA] rules on the veteran's appeal." E.g. , J.A. 101. Appellants argue that this approximately four-year delay violates due process. Id. Each mandamus petition only briefly addresses the facts of the individual petitioner's case. See, e.g. , J.A. 104-05.[4]
The Veterans Court entered final judgments denying Appellants' petitions between January and March 2017, and each Appellant timely appealed. We have jurisdiction under 38 U.S.C. § 7292. See Lamb v. Principi , 284 F.3d 1378, 1382 (Fed. Cir. 2002).
III
This court's jurisdiction to review decisions of the Veterans Court is limited. We "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7261(d)(2). This court does, however, have jurisdiction to "decide all relevant questions of law, including interpreting constitutional and statutory provisions." Id. § 7261(d)(1).
Appellants raise two arguments on appeal: first, that the Veterans Court should have applied a different legal standard to analyze their mandamus petitions based on unreasonable delay; and second, that the Veterans Court improperly denied their due process claims. Based on these arguments, Appellants ask this court to enter an order finding the delays suffered by Appellants unconstitutional and directing the Secretary to eliminate unreasonable delay. Alternatively, Appellants ask us to remand these cases with instructions to apply a different legal standard when analyzing unreasonable delay.
A
Appellants' claims of unreasonable delay arise by way of mandamus petitions filed in each of their individual cases. Under the All Writs Act, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or *1343 appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). This power extends to the Veterans Court. Cox v. West , 149 F.3d 1360, 1363-64 (Fed. Cir. 1998). Although "[t]he All Writs Act is not an independent basis of jurisdiction," Baker Perkins, Inc. v. Werner & Pfleiderer Corp. , 710 F.2d 1561, 1565 (Fed. Cir. 1983), it allows courts to issue writs "in aid of their respective jurisdictions," 28 U.S.C. § 1651(a).
With respect to mandamus petitions alleging unreasonable delay, the U.S. Court of Appeals for the D.C. Circuit has explained that "[b]ecause the statutory obligation of a Court of Appeals to review on the merits may be defeated by an agency that fails to resolve disputes, a Circuit Court may resolve claims of unreasonable delay in order to protect its future jurisdiction." Telecomms. Research & Action Ctr. v. FCC ("TRAC "), 750 F.2d 70, 76 (D.C. Cir. 1984) ; see also FTC v. Dean Foods Co. , 384 U.S. 597, 603, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966) (noting that the All Writs Act "extends to the potential jurisdiction of the appellate court where an appeal is not then pending but may be later perfected"). Mandamus is thus an appropriate procedural vehicle to address claims of unreasonable delay in this context.[5]
The statute that outlines the Veterans Court's scope of review, 38 U.S.C. § 7261, states:
(a) In any action brought under this chapter, the Court of Appeals for Veterans Claims, to the extent necessary to its decision and when presented, shall-
...
(2) compel action of the Secretary unlawfully withheld or unreasonably delayed ....
38 U.S.C. § 7261(a)(2). This statute was derived from the similar scope of review statute in the Administrative Procedure Act ("APA"). See 5 U.S.C. § 706(1) ("[T]he reviewing court shall ... (1) compel agency action unlawfully withheld or unreasonably delayed."); S. Rep. No. 100-418, at 60 (1988) ("[T]he other major scope of review provisions contained in proposed section 4026(a)(1) through (a)(3) are derived specifically from section 706 of the APA. Thus, it is the Committee's intention that the court shall have the same authority as it would in cases arising under the APA to review and act upon questions other than matters of material fact made in reaching a decision on an individual claim for VA benefits ....").[6]
Section 7261 provides the standards the Veterans Court must use when reviewing actions of the Secretary. In this case, Appellants allege that the Secretary has unreasonably *1344 delayed action on their claims for disability benefits. The question becomes: how should the Veterans Court analyze whether the Secretary has "unreasonably delayed" such action?
To answer this question, the Veterans Court employs the standard outlined in Costanza v. West , 12 Vet.App. 133 (1999) (per curiam). Appellants contend, however, that the Veterans Court should instead use the standard outlined by the D.C. Circuit in TRAC , 750 F.2d at 79-80. As explained below, we agree with Appellants that TRAC provides a more appropriate framework for analyzing claims of unreasonable delay.
1
Since 1999, the Veterans Court has applied the Costanza standard to evaluate mandamus petitions based on alleged unreasonable delay. There is little to be said about this standard's origin. In a short, per curiam opinion, the Veterans Court held that a mandamus petitioner had not satisfied the second mandamus requirement (a clear and indisputable right to the writ) because "[h]e had not demonstrated that the delay he complains of is so extraordinary, given the demands and resources of the Secretary, that the delay amounts to an arbitrary refusal to act, and not the product of a burdened system." Costanza , 12 Vet.App. at 134. Later cases applied this same standard, and the en banc Veterans Court in Ribaudo v. Nicholson seemed to approve of the standard. See 20 Vet.App. 552, 555 (2007) (en banc) ("When delay is alleged as the basis for a petition, this Court has held that a clear and indisputable right to the writ does not exist unless the petitioner demonstrates that the alleged delay is so extraordinary, given the demands on and resources of the Secretary, that it is equivalent to an arbitrary refusal by the Secretary to act.").
Although this court in a handful of non-precedential decisions has acknowledged the Veterans Court's use of the Costanza standard, we have yet to adopt the standard or endorse its use in a precedential opinion. See, e.g. , Philippeaux v. Shulkin , 702 Fed.Appx. 977, 980 (Fed. Cir. 2017) ; McChesky v. McDonald , 635 Fed.Appx. 882, 886 (Fed. Cir. 2015) ; Davis v. McDonald , 593 Fed.Appx. 992, 994 (Fed. Cir. 2014) ; Jackson v. Shinseki , 338 Fed.Appx. 898, 901-02 (Fed. Cir. 2009).
2
Before the Veterans Court's decision in Costanza , some circuits had been using the standard developed by the D.C. Circuit to analyze mandamus petitions based on alleged unreasonable delay by an agency. See TRAC , 750 F.2d at 79-81 ; Indep. Min. Co. v. Babbitt , 105 F.3d 502, 507 (9th Cir. 1997) ; Towns of Wellesley, Concord & Norwood, Mass. v. FERC , 829 F.2d 275, 277 (1st Cir. 1987). In TRAC , the D.C. Circuit explained that the overarching inquiry in analyzing a claim of unreasonable delay is "whether the agency's delay is so egregious as to warrant mandamus." TRAC , 750 F.2d at 79. The D.C. Circuit pointed to six factors as relevant to this inquiry: (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by *1345 delay; and (6) the court need not find "any impropriety lurking behind agency lassitude" in order to hold that agency action is unreasonably delayed. Id. at 80. In TRAC itself, the D.C. Circuit recognized that this standard is "hardly ironclad, and sometimes suffers from vagueness," id. , and the court has recently emphasized that each case should be analyzed based on its unique circumstances, see Am. Hosp. Ass'n v. Burwell , 812 F.3d 183, 189 (D.C. Cir. 2016).[7]
Other circuit courts have adopted the TRAC standard to evaluate mandamus petitions based on alleged unreasonable delay. In re A Cmty. Voice , 878 F.3d 779, 783-84 (9th Cir. 2017) ("When deciding whether to grant a mandamus petition on the grounds of unreasonable delay, this court applies the six factor balancing test set out by the D.C. Circuit in TRAC ."); Towns of Wellesley, Concord & Norwood, Mass. , 829 F.2d at 277. And, even the Veterans Court in its early days considered some of the TRAC factors when evaluating a mandamus petition based on unreasonable delay. See Erspamer v. Derwinski , 1 Vet.App. 3, 9-11 (1990).
3
With these two proposed frameworks in mind, we turn to the question before us-namely, the proper standard for evaluating claims of unreasonable delay in the VA's adjudication of veterans' benefits.
In Appellants' view, the Costanza standard is insurmountable, as it focuses solely on the VA's interests at the expense of the veterans' interests. Further, Appellants contend that by requiring a "refusal" to act, the Costanza standard effectively requires a petitioner to demonstrate an affirmative or intentional refusal to act by the VA. Meanwhile, Appellants assure us, the TRAC standard provides a more balanced approach because it requires consideration of the veterans' interests and does not require a showing of intent. We agree. As explained below, the six TRAC factors serve as a useful starting point for the Veterans Court to analyze mandamus petitions based on unreasonable delay in the VA's processing of benefits claims and appeals.
The first TRAC factor-that "the time agencies take to make decisions must be governed by a 'rule of reason,' " TRAC , 750 F.2d at 80 -is considered to be the most important factor in some circuits. In re A Cmty. Voice , 878 F.3d at 786 ("The most important is the first factor, the 'rule of reason,' though it, like the others, is not itself determinative."). The second TRAC factor, of course, relates to the first factor, as "a timetable or other indication of the speed with which [Congress] expects the agency to proceed" may "supply content" for the rule of reason. TRAC , 750 F.2d at 80.
Although no congressional timetable for handling these benefits claims currently exists, other considerations can help form a "rule of reason" as to an appropriate timeline. The "rule of reason" analysis must, of course, look at the particular agency action for which unreasonable delay is alleged. It is reasonable that more complex and substantive agency actions *1346 take longer than purely ministerial ones. The "rule of reason" analysis may consider the statutory instruction that cases on remand receive expedited treatment. See 38 U.S.C. § 5109B ("The Secretary shall take such actions as may be necessary to provide for the expeditious treatment by the appropriate regional office of the Veterans Benefits Administration of any claim that is remanded to a regional office of the Veterans Benefits Administration by the Board of Veterans' Appeals."); id. § 7112 ("The Secretary shall take such actions as may be necessary to provide for the expeditious treatment by the Board of any claim that is remanded to the Secretary by the Court of Appeals for Veterans Claims."). The "rule of reason" analysis may also consider whether the delays complained of are based on complete inaction by the VA, or whether the delays are due in part to the VA's statutory duty to assist a claimant in developing his or her case.[8] For example, it should also consider whether delays are due to the agency's failure to perform certain ministerial tasks such as filling out the form certifying the appeal to the BVA and docketing by the BVA.
With these considerations in mind, we see no reason to articulate a hard and fast rule with respect to the point in time at which a delay becomes unreasonable. Because, among other factors, reasonableness depends on the particular agency action that is delayed, a two-year delay may be unreasonable in one case, and it may not be in another. For example, the delay may be the result of the VA's duty to assist the veteran or a delay in obtaining certain historical records.[9] Alternatively, the delay may be the result of a failure to complete clerical or ministerial tasks for the veteran. This "rule of reason" inquiry is best left to the discretion of the Veterans Court.[10]
The third and fifth TRAC factors address what seems to be Appellants' primary concern-namely, that Costanza leaves no room for the Veterans Court to consider the interests of each veteran. Under the third factor, the court considers that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake." TRAC , 750 F.2d at 80. Veterans' disability claims always involve human health and welfare.
Under the fifth factor, the court considers the nature and extent of the interests prejudiced by the delay. As other courts have noted, these two TRAC factors often overlap. In re A Cmty. Voice , 878 F.3d at 787 (referring back to the threat to human welfare and concluding that "children exposed to lead poisoning due to the failure of EPA to act are severely prejudiced by EPA's delay, and the fifth factor *1347 thus favors issuance of the writ"); In re Barr Labs., Inc. , 930 F.2d 72, 75 (D.C. Cir. 1991) (noting that the third TRAC factor "overlaps with the fifth").
The fifth factor incorporates an analysis of the effect of a delay on a particular veteran. For example, the Veterans Court may find that it more strongly favors a finding of unreasonable delay where it is evident that a particular veteran is wholly dependent on the requested disability benefits. As Appellants point out, many veterans depend on these disability benefits for basic necessities, such as food, clothing, housing, and medical care. At the same time, however, the Veterans Court may find this factor does not weigh heavily toward a finding of unreasonable delay where the veteran has a sustainable source of income outside of the VA benefits system.
The fourth TRAC factor requires consideration of the effect of expediting delayed action on agency activities of a higher or competing priority. This factor addresses the government's primary praise of the Costanza test-that the Veterans Court should be able to take account of the practical realities of the burdened veterans' benefits system. See Appellee's Br. 27. We agree with the government that this is a consideration to include in the unreasonable delay analysis, and we think the TRAC standard sufficiently encompasses this concern.
This fourth factor allows the Veterans Court to consider the impact granting mandamus in a particular appeal may have on other agency activities. In other words, the VA may consider as one aspect of the overall TRAC analysis the fact that the VA has fixed resources, and that the agency is in a better position than the courts to evaluate how to use those limited resources. See In re Barr Labs., Inc. , 930 F.2d at 76 ("In short, we have no basis for reordering agency priorities. The agency is in a unique-and authoritative-position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way. Such budget flexibility as Congress has allowed the agency is not for us to hijack."); cf. Mass. v. EPA , 549 U.S. 497, 527, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007) ("[A]n agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities."); Heckler v. Chaney , 470 U.S. 821, 831-32, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) ("The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities."). The VA is necessarily constrained by the resources Congress appropriates. While forcing the VA to focus such limited resources on addressing delays in certain appeals will inure to the benefit of some veterans, such efforts may work a detriment to other veterans who are also relying on the VA for various types of assistance.
This inquiry may also include the impact on other applicants who have filed claims for benefits. For example, granting a mandamus petition may simply shift a finite number of resources from one pending claim to another. Other circuits have expressed similar concerns in other agency contexts. See, e.g. , In re Barr Labs., Inc. , 930 F.2d at 75 ("Assuming constant resources for the generic drug [approval] program, a judicial order putting [the mandamus petitioner] at the head of the queue simply moves all others back one space and produces no net gain.").
Finally, the sixth TRAC factor goes directly to a primary dispute regarding the Costanza standard. In Appellants' view, Costanza requires a mandamus petitioner to show an intentional or affirmative refusal to act by the VA. The government disagrees that Costanza requires actual *1348 intent and instead characterizes the Costanza standard as allowing mandamus where inaction "amounts" to a refusal to act.
It is unclear whether the Veterans Court has required a showing of intentional refusal to act when applying Costanza . Regardless, in our view, the sixth TRAC factor gives this type of inquiry its due. Under this factor, the Veterans Court need not find "any impropriety lurking behind agency lassitude" to hold that agency action is unreasonably delayed. TRAC , 750 F.2d at 80. A writ may be appropriate under the TRAC analysis even where there is no evidence of bad faith. See In re A Cmty. Voice , 878 F.3d at 787 ("Even assuming that EPA has numerous competing priorities under the fourth factor and has acted in good faith under the sixth factor, the clear balance of the TRAC factors favors issuance of the writ."). And certainly, in the unlikely event that an individual could show that the VA "singled [the individual] out for mistreatment," such evidence would tend to favor issuance of the writ. In re Barr Labs., Inc. , 930 F.2d at 75.
Accordingly, today we adopt the TRAC standard as the appropriate standard for the Veterans Court to use in evaluating mandamus petitions based on alleged unreasonable delay. And, "[t]o the extent [our] prior non-precedential rulings diverge from our holding today, any perceived conflict is superseded by today's precedential authority." Monk v. Shulkin , 855 F.3d 1312, 1322 (Fed. Cir. 2017).
B
Appellants also contend that, under the factors outlined in Mathews v. Eldridge , the delays they have experienced violate procedural due process. See 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
Appellants' mandamus petitions broadly ask the Veterans Court to "declare that the VA's conduct violates the Due Process Clause of the Fifth Amendment" and to "impose a remedy sufficient to address these violations of [Appellants'] constitutional rights." E.g. , J.A. 102. The petitions also ask the Veterans Court "to require [the VA] to process promptly the individual claim embodied in this petition, and to declare that the delays regarding the approximately 146,000 pending appeals violate the veterans' due process rights." E.g. , J.A. 104 ¶ 11. Finally, the petitions conclude by asking for an order "hold[ing] unconstitutional under the Due Process Clause of the Fifth Amendment to the Constitution any statute, regulation or practice that interferes with prompt and speedy appeals." E.g. , J.A. 117. In sum, Appellants' petitions ask the Veterans Court to broadly declare that the entire process is unconstitutional. Cf. Norton v. S. Utah Wilderness All. , 542 U.S. 55, 64, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004) (noting that a claim under § 706(1) of the APA is limited to "discrete agency action" and precludes a "broad programmatic attack").
Given our holding that the Veterans Court should have conducted a more searching inquiry in evaluating Appellants' mandamus petitions, the Veterans Court will have the opportunity to determine, under the TRAC standard, whether the delay in each individual case was unreasonable. As the D.C. Circuit has explained,
a claim that a plaintiff has been denied due process because of delayed agency action is essentially no different than an unreasonable delay claim; indeed, if there is any difference at all, it is that an unreasonable delay claim would likely be triggered prior to a delay becoming so prolonged that it qualifies as a constitutional deprivation of property.
Vietnam Veterans of Am. v. Shinseki , 599 F.3d 654, 660 (D.C. Cir. 2010). If the Veterans Court, employing the TRAC analysis, *1349 finds a delay unreasonable (or not unreasonable), it need not separately analyze the due process claim based on that same delay. See id.
IV
Although this opinion will require remanding certain cases for consideration under the TRAC standard, we note some individual cases have become moot. In Ms. Aktepy's case, the BVA recently issued its decision, making her appeal moot. As to Ms. Scyphers, while it appears that the original appellate proceedings regarding her Notice of Disagreement filed in October 2014 concluded with a grant of benefits in her favor, she has now filed a Notice of Disagreement with respect to the effective date of that award of benefits. ECF No. 82-1 at 4; see also ECF No. 69-1 at 3. This second Notice of Disagreement was filed in November 2017; the VA issued the SOC in January 2018; and Ms. Scyphers filed her Form 9 in April 2018. ECF No. 82-1 at 4. Because the delays on which her original mandamus petition was based have essentially been reset, we find her appeal moot. With respect to her recently filed appeal, Ms. Scyphers remains free to, in the future, file a mandamus petition based on delay, should the need arise. Finally, and regretfully, the parties have informed us that Mr. Myers passed away during the course of this appeal, and the parties agree that his appeal is now moot.
V
For the reasons above, we hold that the Veterans Court should look to the TRAC factors as guidance when evaluating mandamus petitions based on unreasonable delay in the VA's adjudication of benefits claims. We vacate and remand the appeals of Mr. Martin, Mr. Jean, Mr. Matthews, Mr. Meissgeier, Ms. Mote, and Mr. Rhodes for reconsideration under the TRAC standard.[11] We dismiss the appeals of Mr. Myers, Ms. Scyphers, and Ms. Aktepy as moot.
VACATED-IN-PART, REMANDED-IN-PART, AND DISMISSED-IN-PART
COSTS
Costs to Appellants.

After the Notice of Disagreement is filed, the veteran may either proceed directly with his or her appeal to the Board of Veterans' Appeals ("BVA"), as outlined here, or first request de novo review by a VA Decision Review Officer at the regional office.

As the government explains in its briefing, after a veteran files a Notice of Disagreement, the agency reexamines the claim and determines whether additional review or development is warranted. If the disagreement is not resolved by granting the benefit sought or through withdrawal of the Notice of Disagreement, the VA must then prepare an SOC. See 38 U.S.C. § 7105(d)(1). As outlined by statute, the SOC includes:
(A) A summary of the evidence in the case pertinent to the issue or issues with which disagreement has been expressed.
(B) A citation to pertinent laws and regulations and a discussion of how such laws and regulations affect the agency's decision.
(C) The decision on each issue and a summary of the reasons for such decision.
38 U.S.C. § 7105(d)(1) ; see 38 C.F.R. § 19.29.

The appeals of four other individuals were consolidated under a separate appeal number. Rose v. O'Rourke , No. 17-1762. The consolidated appeals were argued together, and this court will issue a separate opinion to address the cases of those four individuals.

We note that each mandamus petition in this case asked for broad relief, including a declaration "hold[ing] unconstitutional under the Due Process Clause of the Fifth Amendment to the Constitution any statute, regulation or practice that interferes with prompt and speedy appeals," see, e.g. , J.A. 117, and holding "that the delays regarding the approximately 146,000 pending appeals violate the veterans' due process rights," see, e.g. , J.A. 104 ¶ 11. On appeal, however, Appellants now state that they seek relief only with respect to each individual's particular claim and not on behalf of all veterans with pending claims before the VA. Appellants' Reply Br. 30.

"Because the issuance of the writ is a matter vested in the discretion of the court to which the petition is made, and because this Court is not presented with an original writ of mandamus," we need not analyze each traditional mandamus requirement. Cheney v. U.S. Dist. Court for D.C. , 542 U.S. 367, 391, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) ; see id. at 380-81, 124 S.Ct. 2576 (listing the three traditional requirements). This, however, does not detract from the fact that all three requirements must be demonstrated for mandamus to issue. See id. at 380-81, 124 S.Ct. 2576. Instead, we remand for the Veterans Court to consider the traditional mandamus requirements as informed by the TRAC analysis.

The original version of § 7261(a)(2) allowed the Veterans Court to "compel action of the Administrator unlawfully withheld," but did not include action "unreasonably delayed." Veterans' Judicial Review Act, Pub. L. No. 100-687, sec. 301(a), § 4061(a)(2), 102 Stat. 4105, 4115 (1988). Congress amended the statute one year later to add "or unreasonably delayed." Veterans' Benefits Amendments of 1989, Pub. L. No. 101-237, § 602(c), 103 Stat. 2062, 2095 (1989).

More recently, courts employing TRAC have also noted a need to first determine whether an agency has a duty to act, given that "an agency cannot unreasonably delay that which it is not required to do." In re A Cmty. Voice , 878 F.3d 779, 784 (9th Cir. 2017) ; cf. Heckler v. Ringer , 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (noting in the context of a mandamus based on 28 U.S.C. § 1361 that an agency must owe the petitioner a "clear nondiscretionary duty"). In this case, however, no party disputes that the VA has a duty to adjudicate and issue final decisions on these pending claims for disability benefits.

We also note that the Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, 131 Stat. 1105 (2017), modifies some aspects of the appeal process, and therefore the unreasonable delay analysis may vary based in part on these new changes.

Again, however, we see no reasonable explanation for the historic delays that have occurred during appeal certification, which takes an average of 773 days, and during transfer to the BVA, which takes another 321 days, on average. Such delays appear to be inexplicable.

With respect to Appellants' reliance on statistics regarding average delays, we agree with the Veterans Court that reliance on such statistics is merely speculative. See J.A. 8, 52, 26. Each mandamus petition should be based on the facts of that particular case. As we have explained before, such potential delays depend on a long "chain of hypothesized actions." Ebanks v. Shulkin , 877 F.3d 1037, 1039 (Fed. Cir. 2017).

Although two of the Veterans Court's orders in this consolidated set of appeals did not expressly rely on the Costanza standard, it is unclear what standard, if any, the Veterans Court employed in those cases. As such, we find it appropriate to remand those cases for consideration under the TRAC standard.