# United States Court of Appeals for the Federal Circuit

---

**EUGENIA MOTE,**
*Claimant-Appellant*

**v.**

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2019-2367

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 16-2506, Senior Judge Mary J. Schoelen.

---

Decided: September 28, 2020

---

CHARLES MCCLOUD, Williams & Connolly LLP, Washington, DC, argued for claimant-appellant. Also represented by STEPHEN RABER, LIAM JAMES MONTGOMERY; JOHN AUBREY CHANDLER, ELIZABETH VRANICAR TANIS, Atlanta, GA.

ASHLEY AKERS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by ETHAN P. DAVIS, MARTIN F. HOCKEY, JR., ROBERT

EDWARD KIRSCHMAN, JR.; BRIAN D. GRIFFIN, JONATHAN KRISCH, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

————————————

Before PROST, *Chief Judge*, MOORE and STOLL, *Circuit Judges*.

PROST, *Chief Judge*.

Mrs. Eugenia Mote appeals from the Court of Appeals for Veterans Claims' ("Veterans Court") dismissal of her mandamus petition alleging unreasonable delay by the Department of Veterans Affairs ("VA") in resolving her benefits claim.

Mrs. Mote has been here before, under similar circumstances. She was one of nine consolidated appellants in *Martin v. O'Rourke*, 891 F.3d 1338 (Fed. Cir. 2018), where we replaced the Veterans Court's test for evaluating an unreasonable-delay mandamus petition with the standard articulated in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"). We remanded Mrs. Mote's individual case to the Veterans Court to conduct a *TRAC* analysis in the first instance. But on remand, the Veterans Court failed to conduct such an analysis. We therefore remand, again, for it to do so.

## BACKGROUND

### I

Mrs. Mote is the widow of veteran Wayne Gary Mote, who honorably served in the United States Air Force from February 1961 to May 1965. Mr. Mote claimed to have participated in two covert missions to Da Nang, Vietnam, where Agent Orange had been deployed. After leaving the service, Mr. Mote developed coronary artery disease and lung cancer.

In November 2010, Mr. Mote filed a disability claim for ischemic heart disease based on exposure to Agent Orange during his alleged missions to Vietnam. The VA denied his claim in November 2012. In January 2013, Mr. Mote filed his Notice of Disagreement with that denial, but he passed away just a few months later. Mrs. Mote thereafter substituted for his claim and also filed a dependency-and-indemnity compensation ("DIC") claim. The VA denied Mrs. Mote's DIC claim in January 2015, and Mrs. Mote filed her Notice of Disagreement with that denial in November 2015.

The VA issued its Statement of the Case in May 2016. The following month, Mrs. Mote filed her substantive appeal with the Board of Veterans' Appeals ("Board") and requested an in-person Board hearing at her local VA regional office (a so-called Travel Board hearing).

In September 2016, Mrs. Mote petitioned the Veterans Court for a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651, alleging unreasonable delay in her case. The Veterans Court denied the petition, applying the standard outlined in that court's decision *Costanza v. West*, 12 Vet. App. 133 (1999), which asked whether the complained-of delay was "so extraordinary, given the demands [on] and resources of the Secretary, that the delay amounts to an arbitrary refusal to act." *See* J.A. 198 (citing *Costanza*, 12 Vet. App. at 134). The Veterans Court found that Mrs. Mote's complained-of delay failed to meet that standard. It also acknowledged the government's position that, because Mrs. Mote requested a Travel Board hearing and maintained that request, the Board could not issue a decision until after the hearing. J.A. 197. According to the government, due to limited Board personnel and resources, it "could not predict how long" Mrs. Mote might have to wait for her hearing. *See* J.A. 197.

Mrs. Mote appealed to this court. We consolidated her appeal with that of eight other individual appellants and

held, in *Martin*, that the Veterans Court should use the *TRAC* standard to evaluate unreasonable-delay mandamus petitions (as opposed to the *Costanza* standard it previously used). *Martin*, 891 F.3d at 1344–48. We remanded Mrs. Mote's case to the Veterans Court "for reconsideration under the *TRAC* standard." *Id.* at 1349.

## II

In November 2018, following this court's July 2018 mandate, Mrs. Mote filed with the Veterans Court an amended mandamus petition—largely identical to the previous, but further requesting a "reasoned decision" from the Board (to be issued within 45 days of the court's order) and periodic progress reports until the requested decision's issuance. J.A. 68; *see* J.A. 50–70.

The government responded to Mrs. Mote's petition on March 8, 2019. Incidentally, that very same day the Board finally scheduled her requested Travel Board hearing, setting it for May 13, 2019—just over two months out.

Before the scheduled hearing occurred, however, the Veterans Court dismissed Mrs. Mote's mandamus petition in a single-judge order. *Mote v. Wilkie*, No. 16-2506, 2019 WL 1599447 (Vet. App. Apr. 16, 2019). The court began by recounting the case's procedural history, including this court's remand for reconsideration under the *TRAC* standard. But after setting forth that standard, the court did not apply or otherwise engage with it. Instead, the court dwelled on the recently scheduled (yet still-pending) hearing, reasoning: "Because [Mrs. Mote] has not yet participated in her scheduled Board hearing, her request for a writ of mandamus for the Board to issue a decision concerning her claims is premature." *Id.* at *2.[1] The court did not

---

[1]    The Veterans Court also declined to entertain Mrs. Mote's requests to (1) generally hold unconstitutional or invalidate "any statute, regulation, or practice" contributing

separately address the possibility of granting Mrs. Mote's request for progress reports pending the requested Board decision. Mrs. Mote moved for a panel decision on May 2, 2019.

Meanwhile, the Travel Board hearing occurred as scheduled on May 13, 2019, during which Mrs. Mote presented argument and evidence concerning her late husband's alleged covert missions to Vietnam. *See* J.A. 209–36.

On July 15, 2019, the Veterans Court ruled on Mrs. Mote's motion for a panel decision. J.A. 2. Although the single-judge order had dismissed Mrs. Mote's petition mainly because her hearing had not yet occurred, the panel—two months after the hearing—retained that order as the decision of the Veterans Court. J.A. 2. The Veterans Court entered its final judgment on August 6, 2019, and Mrs. Mote again appealed to this court.

Eight days after the Veterans Court's final judgment, the Board took up Mrs. Mote's case but remanded to a VA regional office for further factual development. *See* J.A. 240–44.

## DISCUSSION

This court has limited jurisdiction to review Veterans Court decisions. We "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case."

---

to allegedly unreasonable delay; and (2) provide systemic (as opposed to individualized) relief from such delay. *Mote*, 2019 WL 1599447, at *3; *see Martin*, 891 F.3d at 1348 (characterizing similar requests as "ask[ing] the Veterans Court to broadly declare that the entire process is unconstitutional"). Mrs. Mote has not challenged these rulings on appeal.

38 U.S.C. § 7292(d)(2). This court does, however, have jurisdiction to "decide all relevant questions of law, including interpreting constitutional and statutory provisions." *Id.* § 7292(d)(1).

Mrs. Mote argues that by failing to apply *TRAC*, the Veterans Court applied an improper legal standard in deciding her mandamus petition. The proper legal standard for the Veterans Court to use in deciding mandamus petitions is an issue within this court's jurisdiction. *See Martin*, 891 F.3d at 1343 n.5, 1344–48 (addressing, and articulating, the proper legal standard for the Veterans Court to use in deciding unreasonable-delay mandamus petitions); *see also Beasley v. Shinseki*, 709 F.3d 1154, 1158 (Fed. Cir. 2013) ("This court has jurisdiction to review the [Veterans Court's] decision whether to grant a mandamus petition that raises a non-frivolous legal question . . . ."); *Lamb v. Principi*, 284 F.3d 1378, 1382 (Fed. Cir. 2002) ("There is no indication . . . that in . . . limiting our jurisdiction, Congress intended to insulate from judicial review [the Veterans Court's] ruling on mandamus petitions.").

While the government does not dispute our statutory jurisdiction to address the proper legal standard, it argues that the Board's post-appeal remand mooted this case, thus depriving this court of constitutional jurisdiction. We address this argument first. After disposing of it, we address the merits of Mrs. Mote's challenge to the legal standard the Veterans Court applied in deciding her mandamus petition, as well as her constitutional due process challenge.

I

Article III of the Constitution limits federal courts to deciding "Cases" and "Controversies." U.S. CONST. art. III, § 2; *Rucho v. Common Cause*, 139 S. Ct. 2484, 2493 (2019). A case that becomes moot is no longer a "Case" or "Controversy" for Article III purposes. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). And a case becomes moot when a claimant receives all her requested relief. *See, e.g.*, *Monk*

*v. Shulkin*, 855 F.3d 1312, 1316 (Fed. Cir. 2017); *accord Cierco v. Mnuchin*, 857 F.3d 407, 410 (D.C. Cir. 2017) ("Appellants received full relief on their first claim. Therefore, we agree that Appellants' first claim for relief is moot."); *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1144 (9th Cir. 2016) ("[A] lawsuit—or an individual claim—becomes moot when a plaintiff *actually receives* all of the relief he or she could receive on the claim through further litigation.").

The government argues that the Board's remand for further factual development satisfied Mrs. Mote's request for a reasoned "decision," thus mooting this case. We disagree.

The Board's jurisdictional statute references Board "decisions," 38 U.S.C. § 7104, and the Veterans Court's jurisdictional statute grants it authority to review Board "decisions," *id.* § 7252(a). Our precedent holds that a Board "decision" in this context does not mean a mere remand. *Kirkpatrick v. Nicholson*, 417 F.3d 1361, 1364 (Fed. Cir. 2005) ("Our case law and [§] 7104(d)(2) define a Board decision as including an order granting appropriate relief or denying relief. The Board's remand in this case [for additional medical examinations] contains no order granting or denying relief.");[2] *id.* at 1365 (agreeing with the government "that the Board's remand in this case was not a decision within the meaning of [§] 7252(a)").

The government acknowledges as much. *See* Appellee's Br. 15 n.5. Still, it argues that Mrs. Mote's failure to "caveat" her request means that the Board's remand—a decision, of sorts—gave her what she requested. Given our precedent, however, we do not believe Mrs. Mote had to

---

[2]    Section 7104(d)(2) has since been redesignated as § 7104(d)(3). Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, sec. 2(w)(2)(B), 131 Stat. 1105, 1114.

caveat her request for a "decision" to convey that a remand alone would not suffice; rather, the far more reasonable interpretation of her request for a Board "decision" was a grant or denial of benefits. *See Tyrues v. Shinseki*, 732 F.3d 1351, 1355 (Fed. Cir. 2013) ("A decision of the Board is an order that either grants or denies benefits sought by the veteran."); *Kirkpatrick*, 417 F.3d at 1364; *Maggitt v. West*, 202 F.3d 1370, 1376 (Fed. Cir. 2000) ("A 'decision' of the Board . . . is the decision with respect to the benefit sought by the veteran: those benefits are either granted . . . or they are denied.").

Further, even if by requesting a "decision" Mrs. Mote left any doubt as to what she sought, her particular circumstances would lay that doubt to rest. Caveat or not, after eight years,[3] a mandamus petition, and an appeal to this court (resulting in a remand to the Veterans Court), followed by another mandamus petition, it seems implausible that a remand was all her petition contemplated when requesting a "decision" from the Board.

The petition also sought progress reports pending the requested decision. J.A. 68. Because we conclude that Mrs. Mote has not received her requested decision, we conclude that her request for progress reports is not moot.[4]

---

[3]    From the filing of Mr. Mote's disability claim (November 2010) to the filing of the petition at issue here (November 2018). Now approaching ten years.

[4]    The government recognizes that Mrs. Mote's petition further sought an order finding that Mrs. Mote's rights had been violated. Appellee's Br. 13 (citing J.A. 68). Because we conclude that this case is not moot (given two remaining live requests—a Board decision and progress reports), we need not reach the government's argument as to whether Mrs. Mote's request for such an order would, by itself, be sufficient "to carry this litigation forward," *see id.*

We do not mean to suggest, however, that the Board's remand was improper.  Indeed, although Mrs. Mote maintains that it was unnecessary, Oral Arg. at 6:24–40, she does not dispute that her requested relief allowed for the possibility of a remand en route to an ultimate Board decision, *id.* at 3:23–46.[5]  Her contention is that the Veterans Court could, and should, have done more to ensure the case moved along—for example, by imposing deadlines both to complete any remand proceedings and to issue a decision thereafter, or at least by requiring progress reports until the Board issued a decision.  *Id.* at 3:46–4:48; *see* Reply Br. 7.

In light of the above, it is clear that the Board's remand did not provide all of the relief Mrs. Mote requested, that a case or controversy remains, and that we may adjudicate it.

II

We turn now to the merits.  Mrs. Mote argues that the Veterans Court legally erred by failing to conduct the *TRAC* analysis that *Martin* requires.  The government has two responses—first, that the Veterans Court did not need to conduct that analysis here; and second, that the court actually did so.  We address these in turn.  We lastly address Mrs. Mote's constitutional due process challenge.

A

The Supreme Court in *Cheney* articulated three conditions that must be satisfied before a court may grant the extraordinary writ of mandamus: (1) the party seeking the writ must have "no other adequate means" to obtain the desired relief; (2) the party's right to the writ must be "clear and indisputable"; and (3) even if these first two conditions

---

[5]    No. 19-2367, http://www.cafc.uscourts.gov/oral-argument-recordings ("Oral Arg.").

are met, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004) (cleaned up).

Further, the D.C. Circuit in *TRAC* set forth a six-factor standard useful for evaluating mandamus petitions alleging unreasonable agency delay: (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude" in order to hold that agency action is unreasonably delayed.  750 F.2d at 80.

In *Martin*, this court adopted the *TRAC* standard as the appropriate standard for the Veterans Court to use in evaluating mandamus petitions alleging unreasonable delay by the VA.  *Martin*, 891 F.3d at 1348.  While we acknowledged that "all three [*Cheney*] requirements must be demonstrated for mandamus to issue," *id.* at 1343 n.5, we remanded this case specifically "for reconsideration under the *TRAC* standard," *id.* at 1349.

Yet, now back before this court, the government contends that in dismissing Mrs. Mote's petition, the Veterans Court did not have to consider the *TRAC* standard after all. The government seizes on *Cheney*'s third factor—whether a writ is "appropriate under the circumstances"—and argues that the Veterans Court found this factor not met, thus obviating the need to engage with the *TRAC* factors

before dismissing the mandamus petition. *See* Appellee's Br. 21, 25–27. This is not the correct approach. Indeed, the Veterans Court did not even purport to adopt this approach—after appearing once, in the opinion's legal-standard section, the *Cheney* factors were not to be seen again. *See Mote*, 2019 WL 1599447, at *2–3. But setting that aside, we remain unconvinced as to the approach's general soundness.

*Cheney*'s third factor has been described as a "relatively broad and amorphous totality of the circumstances consideration." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 762 (D.C. Cir. 2014) (Kavanaugh, J.). *Cheney* itself describes the factor as one appropriately taken up after consideration of the more-specific "no other adequate means" and "clear and indisputable right" factors: "Third, *even if the first two prerequisites have been met*, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." 542 U.S. at 381 (emphasis added). This phrasing suggests that the third factor is intended more as a final check on granting the writ than as an amorphously discretionary means of denying it, without consulting the other two factors. This is particularly so given that, as an "extraordinary" remedy, it will usually not be hard to find *some* reason counseling against a writ. We therefore seriously doubt that the Court intended the analysis to be conducted in the way the government suggests.

We reach a similar conclusion regarding the *TRAC* factors. These specific factors have emerged over time as having particular relevance to petitions alleging unreasonable agency delay. And, as we held in *Martin*, the Veterans Court should consider them in this context. 891 F.3d at 1344 ("[W]e agree . . . that *TRAC* provides a more appropriate framework for analyzing claims of unreasonable delay."); *id.* at 1345 ("[T]he six *TRAC* factors serve as a useful starting point for the Veterans Court to analyze mandamus petitions based on unreasonable delay in the VA's

processing of benefits claims and appeals."); *id.* at 1349 ("[W]e hold that the Veterans Court should look to the *TRAC* factors as guidance when evaluating mandamus petitions based on unreasonable delay in the VA's adjudication of benefits claims."). While the government maintains that *TRAC* doesn't "supplant the entire mandamus analysis" and that satisfying the third *Cheney* factor remains necessary before granting mandamus, Appellee's Br. 25–26, we readily accept as much (at least for argument's sake)—yet still conclude that the *TRAC* factors should be *considered* before dismissing or otherwise denying mandamus petitions alleging unreasonable agency delay.[6] Here, they weren't considered at all.

Even apart from the analytical error of failing to apply *TRAC*, the government's argument based on *Cheney*'s third

---

[6]    Courts that have discussed the interplay among the *TRAC* factors and the more-traditional mandamus requirements (including those articulated in *Cheney*) have been inconclusive. *See Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189–90 (D.C. Cir. 2016) (explaining that, "[b]ecause [the *TRAC*] factors function not as a hard and fast set of required elements, but rather as useful guidance as to whether a delay is so egregious as to warrant mandamus, their roles may differ depending on the circumstances" (cleaned up)); *cf. In re Cal. Power Exch. Corp.*, 245 F.3d 1110, 1125 (9th Cir. 2001) (observing that the *TRAC* factors were "somewhat different" from the more-traditional mandamus considerations at issue, but concluding that the delay under *TRAC* was not so unreasonable as to leave petitioner without an adequate alternative remedy—i.e., simply waiting for a final order). We need not resolve specifically where and how *TRAC* fits in among the *Cheney* factors to reaffirm, as we do here, that the Veterans Court should consider the *TRAC* factors when evaluating an unreasonable-delay mandamus petition.

factor fails on its own merits.  According to the government, the Veterans Court properly concluded that the pendency of Mrs. Mote's hearing made compelling "an immediate [B]oard decision" inappropriate under the circumstances.[7] Appellee's Br. 21, 26–27; *see id.* at 21–27.  There are at least two problems with this argument.

First, this argument fails to acknowledge the other relief Mrs. Mote's petition sought, such as progress reports pending the Board's decision.  J.A. 68.  Neither the Veterans Court nor the government has explained why the mere pendency of Mrs. Mote's hearing made compelling progress reports inappropriate—nor is it apparent to this court.

Second, the government fails to appreciate the other options available to the Veterans Court to provide Mrs. Mote relief.  Indeed, as the issuance of a writ is "largely controlled by equitable principles," *Duncan Townsite Co. v. Lane*, 245 U.S. 308, 311–12 (1917) (Brandeis, J.); *see also Clinton v. Goldsmith*, 526 U.S. 529, 537 (1999) ("The All Writs Act invests a court with a power essentially equitable . . . ."), the Veterans Court enjoys flexibility to fashion the appropriate relief in a given case, *see Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) ("The essence of equity jurisdiction has been the power . . . to do equity and to mould each decree to the necessities of the particular case.  Flexibility rather than rigidity has distinguished it.").  In *TRAC* itself the court "fashion[ed] a remedy for the specific instances presented by [that] case"—withholding mandamus, yet retaining jurisdiction and ordering the agency to provide (1) the dates by which it anticipated resolving the claims; and (2) periodic progress reports.  *TRAC*, 750 F.2d at 80–81, 81 nn.43–44.  Therefore, even if compelling an "immediate" decision (or one within 45 days) were inappropriate

---

[7]   We note that Mrs. Mote did not request an "immediate" Board decision; she requested a decision within 45 days of the Veterans Court's order.  J.A. 68.

in view of the pending hearing, the Veterans Court was not powerless to fashion other relief, such as giving the Board a more lenient, yet still specific, deadline by which to issue a decision. A genuine *TRAC* analysis may have informed not only whether to provide Mrs. Mote any relief but also the appropriate character of that relief.

Here, it is enough to say that the Veterans Court should have considered the *TRAC* factors before dismissing Mrs. Mote's petition. Its failure to do so was legal error.

B

Having maintained that the Veterans Court did not need to consider the *TRAC* factors, the government also argues that it's "clear" the court *did* consider them. Appellee's Br. 24–25. But we just don't see it. As with *Cheney*, the *TRAC* factors made a quick exit after their initial appearance. And, in advancing this argument, the government misunderstands some of these factors.

For example, it argues that the Veterans Court considered the first *TRAC* factor—requiring that an agency's time to make decisions be governed by a "rule of reason"—by "address[ing] the *reason* Mrs. Mote had not yet received a [B]oard decision." Appellee's Br. 25. But the only reason the Veterans Court gave was the pendency of Mrs. Mote's hearing. Contrary to the government's suggestion, the first *TRAC* factor's "rule of reason" contemplates more than simply identifying the next prerequisite in the process; it contemplates whether the entire *delay* has been reasonable. In noting the hearing's pendency, the Veterans Court did not consider whether it was reasonable that the hearing had not already taken place—nor, more generally, whether it was reasonable that after several years Mrs. Mote had yet to receive a decision from the Board.

The government also argues that the Veterans Court considered *TRAC* factor five—the nature and extent of the interests prejudiced by delay—by addressing Mrs. Mote's

"*interest* in receiving [a Board] decision immediately." Appellee's Br. 25. Though somewhat unclear from its brief, to the extent the government suggests that this factor is addressed simply by disposing of a petition that seeks action, the government is mistaken. Indeed, it could always be argued that, by disposing of the petition, the court has addressed (even indirectly) the petitioner's "interest" in that action. But this factor clearly contemplates more than that. As we explained in *Martin*, this factor "incorporates an analysis of the effect of a delay on a *particular veteran*"—including the extent to which the veteran is dependent on the requested benefits.[8] 891 F.3d at 1347 (emphasis added).

Ultimately conceding that the Veterans Court did not proceed "step-by-step" through an analysis of each *TRAC* factor, the government nonetheless stresses that courts have latitude when crafting their opinions. Appellee's Br. 24–25. Indeed, they do. But Mrs. Mote's quarrel, and our concern, is not so much with the opinion's organization or its treatment of one *TRAC* factor or another; it's that, on a potentially meritorious mandamus petition, the opinion failed to consider those factors at all. *See* Reply 19–20; Oral Arg. at 28:14–28. And, to the extent the government's argument implies that a rote walk-through of the factors is what this court expects, that is not so. *Martin* recognized the flexibility of the inquiry, noting that the *TRAC* standard is "hardly ironclad, and sometimes suffers from vagueness," and that "each case should be analyzed based on its unique circumstances." *See* 891 F.3d at 1345 (first quoting *TRAC*, 750 F.2d at 80; and then citing *Am. Hospital Ass'n*, 812 F.3d at 189). The point is not merely to check boxes; it's to engage with factors that help illuminate the mandamus inquiry to more reliably reach a sound result.

---

[8] The veteran is, of course, in the best position to substantiate particularized claims of prejudice.

We must, however, decline Mrs. Mote's invitation to engage with these factors in the first instance. *See* Appellant's Br. 22–28, 30, 41–42. Instead, the Veterans Court should do so, as that is the court to which the petition is made. *See Martin*, 891 F.3d at 1343 n.5 ("'Because the issuance of the writ is a matter vested in the discretion of the court to which the petition is made, and because this [c]ourt is not presented with an original writ of mandamus,' we need not analyze each traditional mandamus requirement." (quoting *Cheney*, 542 U.S. at 391)). Whether a delay is so egregious as to justify the extraordinary writ depends on issues that are likely to arise with some frequency among veterans. The Veterans Court—a court Congress established specifically for judicial review concerning veterans' benefits claims[9]—is uniquely well positioned to address these issues first. Therefore, as in *Martin*, we deem it appropriate to remand to the Veterans Court for a genuine consideration of Mrs. Mote's petition under the *TRAC* standard—though we do so reluctantly, and warily, given this case's history and a remand's potential to prolong the complained-of delay.

C

Mrs. Mote additionally argues that the Veterans Court erred by failing to address her claim that, under the factors outlined in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the delay she has experienced violates procedural due process. Appellant's Br. 16–17, 31–32. In *Martin*, we addressed appellants' separate due process claims and observed that "a claim that a plaintiff has been denied due process because of delayed agency action is essentially no different than an unreasonable delay claim." 891 F.3d at 1348 (quoting *Vietnam Veterans of Am. v. Shinseki*, 599

---

[9]    *See* Veterans' Judicial Review Act, Pub. L. No. 100-687, Div. A, Title III, 102 Stat. 4105, 4113–22 (1988); *see generally* H.R. Rep. No. 100-963, pt. 1 (1988).

F.3d 654, 660 (D.C. Cir. 2010)). We also held that, on re-
mand, "the Veterans Court will have the opportunity to de-
termine, under the *TRAC* standard, whether the delay"
was unreasonable. *Id.*; *see id.* at 1348–49 ("If the Veterans
Court, employing the *TRAC* analysis, finds a delay unrea-
sonable (or not unreasonable), it need not separately ana-
lyze the due process claim based on that same delay.").
Because on remand the Veterans Court failed to employ
the *TRAC* analysis to assess the delay's reasonableness,
and because we remand again for that analysis, we adopt
a similar disposition here.

## CONCLUSION

We find it necessary to repeat today what we said in
*Martin*: The *TRAC* standard is "the appropriate standard
for the Veterans Court to use in evaluating mandamus pe-
titions based on alleged unreasonable delay." *Martin*, 891
F.3d at 1348. Because the Veterans Court did not apply
this standard as required here, we again vacate the court's
judgment and remand for it do so.

## VACATED AND REMANDED

### COSTS

Costs to Claimant-Appellant.