# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 20-5221

JOHN B. WELLS, PETITIONER,

v.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before BARTLEY, *Chief Judge*, and GREENBERG and JAQUITH, *Judges*.

## O R D E R

On July 27, 2020, John B. Wells, Esq., filed a petition for extraordinary relief in the nature of a writ of mandamus. The petition challenges VA's process for issuing payment to individuals who successfully represent VA claimants pursuant to fee agreements executed under 38 U.S.C. § 5904(d)(2) and 38 C.F.R. § 14.636. Those provisions authorize VA to pay fees directly to a representative from any past-due VA benefits awarded on the basis of a claim. 38 U.S.C. § 5904(d)(2)(A)(i); 38 C.F.R. § 14.636(h); *see Gumpenberger v. Wilkie*, 973 F.3d 1379, 1381 (Fed. Cir. 2020). Under the current process, VA does not immediately disburse a section 5904(d)(2) payment to the representative at the time that past due benefits are paid to the VA claimant; instead, to allow claimants to contest a potential fee award, VA waits at least 60 days before issuing a section 5904(d)(2) payment. Mr. Wells challenges the legality of this 60-day waiting period.

Specifically, Mr. Wells asserts that a writ is necessary to compel VA to expeditiously pay outstanding attorney fees and expenses subject to fee agreements executed under section 5904(d)(2) and § 14.636. In the alternative, he asks this Court to order the Secretary to promulgate a method by which claimants may waive the 60-day waiting period associated with VA's section 5904(d)(2) payment. Because Mr. Wells has not demonstrated that he has an indisputable right to the writ, the Court will deny the petition.

## I. BACKGROUND AND PARTIES' ARGUMENTS

Mr. Wells is an attorney who represents veterans before VA. Petition (Pet.) at 2. Within the scope of that representation, he and his clients enter into fee agreements pursuant to section 5904(d)(2) and § 14.636. *Id*. As relevant here and consistent with applicable statutes and regulations, these fee agreements provide that the total fee payable to the representative does not exceed 20% of the total amount of past-due benefits, that the fee is contingent on a favorable resolution of the claim, and that the award of past-due benefits results in a payment to the claimant or appellant from which the fee may be deducted. 38 U.S.C. §§ 5904(d)(1)-(3).

In his initial petition, Mr. Wells asserted that the Secretary's imposition of a 60-day delay into this payment process for attorney fees is arbitrary, capricious, and contrary to law because neither 38 U.S.C. § 5904, which governs attorney fees, nor 38 U.S.C. § 7105A, which governs simultaneously contested claims, specifically permits a 60-day waiting period. Pet. at 3-5, 7. Mr.

Wells contended that section 7105A does not apply because, when a representative and a claimant have entered into a properly executed section 5904(d)(2) fee agreement, approved by the Secretary and that defines the terms of representation, "the presumption must be that the fees are not contested." *Id*. at 7-8. He argued that in the event of a fee dispute there are adequate remedies available to the VA claimant. *Id*. at 5. He indicated that he had 10 outstanding attorney fee agreements awaiting VA payment of past-due benefits and asserted that, to the extent that the 60-day period in those cases had expired, the Secretary was not complying with his own policy of processing fees for payment. *Id*. at 4. He argued that without the extraordinary remedy of mandamus there was no other relief available because there is no appeal procedure that can force the Secretary to pay section 5904(d)(2) fees that have been approved. *Id*. 5.

Alternatively, Mr. Wells asked the Court to order the Secretary to promulgate a method by which veterans can waive the 60-day period. *Id*. at 3, 10. He acknowledged that the 60-day period is "purportedly to allow the veteran to appeal the attorney's fees," *id*. at 10, but cautioned that delays in VA paying section 5904(d)(2) fees deter sole practitioners and small firms from engaging in the practice of veterans benefits law, *id*. at 8.

The Secretary responded to the petition on October 23, 2020, reporting that section 5904(d)(2) fees had already been paid in 9 of the 10 cases identified by Mr. Wells and that VA instructed its finance department to release the section 5904(d)(2) fees in the remaining case. Secretary's Oct. 27, 2020, Response (Resp). at 1-2. On this basis, the Secretary argued that the petition would become moot during the pendency of the Court's review. *Id*. at 2-3, 16. The Secretary argued that, if the petition is not moot, practitioners do not lack adequate alternative means to obtain relief because they may contact VA's attorney fee coordinators (AFCs) to inquire about any purported delay. *Id*. at 4.

Turning to the 60-day period at the heart of the petition, the Secretary argued that legal and practical considerations require VA to issue a decision as to whether the representative identified in a fee agreement is eligible for section 5904(d)(2) fees and that the mere existence of a fee agreement does not satisfy the legal requirements for VA's direct payment of such fees. *Id*. at 7-8 (citing 38 U.S.C. § 5904, 38 C.F.R. § 14.636). Moreover, the Secretary argued that, following the issuance of a fee eligibility decision, the statutes and regulations addressing simultaneously contested claims, including the 60-day period for filing a Notice of Disagreement (NOD), apply and VA must provide notice of appellate rights to the claimant. Secretary's Oct. 27, 2020, Resp. at 10 (citing 38 U.S.C. §§ 5104(a), 7105A; *Mason v. Shinseki*, 743 F.3d 1370. 1376 (Fed. Cir. 2014), *aff'g* 26 Vet.App. 1 (2012)). The Secretary argued that the representative eligibility determination constitutes an important procedural safeguard for claimants, as the decision puts claimants on notice that VA intends to reduce their award of past-due benefits by paying a portion of the benefits to a representative. *Id*. The Secretary contends that 38 U.S.C. § 511(a) permits the Secretary to decide "all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans," and that VA's current procedure is consistent with the law and regulations governing direct-pay fee matters. *Id*. at 11-12. The Secretary also noted that, if Mr. Wells does not wish to be subject to the 60-day waiting period, he is free in the future to use non-direct payment fee arrangements under 38 C.F.R. § 14.636(g)(2). *Id*. at 6-7.

2

Mr. Wells filed a response on November 9, 2020, asserting that he had four additional outstanding attorney fee agreements awaiting Secretarial payment of past-due benefits, with delays exceeding the 60-day period in two of those cases. Pet. Nov. 9, 2020, Resp. at 1.

The Secretary filed a second response on November 30, 2020, reiterating that VA processes are veteran-friendly and that removal of the 60-day period to appeal the agency's section 5904(d)(2) fee determination would leave veterans, their families, or claimants generally vulnerable to the inadvertent or unknowing waiver of their appellate rights to disagree with VA's determination. Secretary's Nov. 30, 2020, Resp. at 1-2. The Secretary addressed Mr. Wells's proposed waiver process and argued that such a process would present a conflict of interest between the representative and the claimant because any waiver would only serve the representative. *Id.* at 3. The Secretary cautioned that a waiver process could serve to encourage the claimant to relinquish the right to challenge the representative's eligibility for a fee or the reasonableness of a fee, given that the section 5904(d)(2) fee is deducted from the VA benefits the representative was retained to pursue. The Secretary contended that "such a situation implicates the attorney's 'interests' in a way that renders objective advice and assistance impossible." *Id.* The Secretary additionally contended that a waiver process would be less efficient for VA and would not guarantee earlier payment of section 5904(d)(2) fees because VA would still need to ensure that any waiver of appellate rights was knowing and voluntary. *Id.* at 2-4.

Mr. Wells subsequently moved for and was granted permission to file an amended petition, identifying a total of 22 cases where attorney fees were paid only after "excessive delays." Amended Pet. at 4-5 (reporting waiting periods ranging from 71 to 148 days after VA notified the claimant that the agency was withholding past-due benefits for receipt of attorney fees). Mr. Wells further identified five cases where the Secretary "failed to issue attorney fee letters, despite attorney eligibility;" the dates of decision associated with these five cases range from February 4, 2020, to August 14, 2020. *Id.* at 5.

In April 2021, the Secretary filed a response to the amended petition, providing updates on the cases Mr. Wells identified and disputing his allegations that VA had failed to issue attorney fee letters. Secretary's Apr. 21, 2021, Resp. at 4-5 (citing Amended Pet. at 5).

On August 12, 2021, the panel held oral argument to address the merits of the petition.[1] Mr. Wells argued that the petition falls within the established mootness exception for disputes that are capable of repetition, but evading review. Oral Argument at 2:25-3:40 (citing *Monk v. Wilkie*, 32 Vet.App. 87, 98 (2019))(en banc order). Mr. Wells further contended that the Court should look to the plain meaning of 38 U.S.C. § 7105A and find that attorney fees resulting from direct pay agreements under 38 U.S.C. § 5904(d)(2) are not "contested" claims and not subject to the claims processing rules for simultaneously contested claims. Oral Argument at 3:43-4:10; 4:12-4:29.

On May 3, 2022, Mr. Wells filed a motion for leave to supplement the petition. In the motion, he asserts that after catching up on unpaid attorney fees prior to the oral argument in this case, he is now again experiencing delays in VA's payment of section 5904(d)(2) attorney fees.

---

[1] *Wells v. McDonough*, U.S. Vet. App. 20-5221 (oral argument held Aug. 12, 2021, https://www.youtube.com/watch?v=bI1NVngQfKY&t=423s) [hereinafter Oral Argument].

Motion (Mot.) at 1. He included with his motion a list of seven additional cases where attorney fee letters issued but fees either have not been disbursed or were disbursed after periods exceeding 71 days. *Id.* at 4. He argues that these cases support a pattern of delayed payment by the Secretary and refute the Secretary's mootness argument. *Id.* at 1.

## II. ANALYSIS

### A. Mootness

We begin by addressing the Secretary's contention that this Court's jurisdiction may be frustrated because the fees that form the basis of the claims advanced in the petition have been or imminently will be paid. *See* Secretary's Oct. 27, 2020, Resp. at 2-3, 16. "The capable-of-repetition-but-evading-review exception to mootness applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Monk*, 32 Vet.App. at 98 (quoting *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)).

As to the first prong of the mootness exception, it is clear that the challenge raised by Mr. Wells as to the Secretary's exercise of his statutory authority under section 5904 could not be fully litigated prior to the Secretary's resolution of the individual fee agreement payments cited in the original petition. *Compare* July 27, 2020, Pet. at 4 (listing 10 cases where attorney fees remained outstanding) *with* Secretary's Oct. 27, 2020, Resp. at 1-2 (reporting that by the time the Secretary filed his response, VA had issued payment in all but one case identified in the original petition). VA's timely payment of section 5904(d)(2) fees is the essence of Mr. Wells's dispute. That the agency, between the filing of Mr. Wells's initial petition and the Secretary's response, paid the fees in all but one case identified in the original petition indicates that the delay associated with the payment of section 5904(d)(2) fees is too short for the Secretary's actions with regard to payment of those fees to be fully litigated.

As to the second prong of the exception, Mr. Wells subsequently filed an amended petition identifying eight additional cases where section 5904(d)(2) fee payments were paid after periods exceeding 60 days and three additional cases where attorney fee payments had not been disbursed. Amended Pet. at 4. He then filed a motion to supplement the petition, identifying seven additional cases that arose after oral argument. Mot. at 1-2, 4. Thus, we credit Mr. Wells's assertion that without Court intervention he will be subject to the same action again. *See Spencer v. Kemna*, 523 U.S. 1, 17 (1998). As a result, we are satisfied that Mr. Wells's petition is *not* moot.

### B. Jurisdiction

This Court's jurisdiction is limited to review of final Board decisions. 38 U.S.C. § 7252(a). The Court has authority to issue extraordinary writs in aid of its prospective jurisdiction pursuant to the All Writs Act (AWA). 28 U.S.C. § 1651(a). *See Cox v. West*, 149 F.3d 1360, 1363-64 (Fed. Cir. 1998) (*Fee Agreement of Cox II*), *vacating on other grounds In re Fee Agreement of Cox,* 10 Vet.App. 361 (1997) (*Fee Agreement of Cox I*); *Erspamer v. Derwinski*, 1 Vet.App. 3, 8 (1990). "[J]urisdiction to issue a writ of mandamus pursuant to the AWA relies upon not *actual* jurisdiction but *potential* jurisdiction." *Fee Agreement of Cox I*, 10 Vet.App. at 370. Prospective jurisdiction

4

under the AWA is particularly applicable where "an alleged refusal to act would forever frustrate the ability of [the Court] to exercise its appellate jurisdiction." *Erspamer*, 1 Vet.App. at 8. The Court's mandamus authority includes issuing writs of mandamus to address claims of unreasonable delay by the Secretary. *See Martin v. O'Rourke*, 891 F.3d 1338, 1342-43 (Fed. Cir. 2018).

In determining whether Mr. Wells's petition meets the above-described requirement, the Court finds the U.S. Court of Appeals for the D.C. Circuit's analysis in *In re Tennant* instructive. 359 F.3d 523, 527 (D.C. Cir. 2004). Considering prospective jurisdiction, that court concluded that

> Once there has been a proceeding of *some* kind instituted before an agency or court that might lead to an appeal, it makes sense to speak of the matter as being "within [our] appellate jurisdiction"—however prospective or potential that jurisdiction might be. . . . . It is not too much to ask that parties seeking mandamus relief take at least the first preliminary step that might lead to appellate jurisdiction in this court in the future.

*In re Tennant*, 359 F.3d at 529 (alteration in the original).

Mr. Wells did exactly that. Specifically, he filed his fee agreements with VA; received preliminary approval of them; and when VA delayed in paying the agreed-upon fees, he contacted the AFCs to attempt to resolve the issue. And when those inquiries did not result in timely payment, Mr. Wells sent a personal letter to then-Secretary of Veterans Affairs Robert Wilkie asking for assistance in obtaining the fees. *See, e.g.*, Oral Argument at 10:55-11:36 (petitioner's report that to obtain fees associated with *Procopio*, one of the cases that is the subject of his petition, he sent a personal letter to then-Secretary Wilkie concerning the release of payment after the AFC indicated that they were unable to assist); Pet. at 4 (noting that petitioner was unable to contact AFCs because their email addresses are not publicly available and they are difficult to reach by telephone). Despite Mr. Wells's assertions to the contrary, Pet. at 5, because a claim of "entitlement to [a] fee under section 5904(d) . . . requires the Secretary to make a decision 'under a law that affects the provision of benefits by the Secretary to veterans . . . and that [] claimant is then entitled to review by the Board[,]"*Fee Agreement of Cox II*, 149 F.3d at 1365 (quoting 38 U.S.C. § 511(a)(a)), the foregoing actions that Mr. Wells took constitute institution of a proceeding before VA that could lead to an appeal at this Court. *See also Hanlin v. United States*, 214 F.3d 1319, 1322 (Fed. Cir. 2000) ("For purposes of jurisdiction . . . 38 U.S.C. § 511(a) *permits* an attorney seeking payment of attorney fees under 38 U.S.C. § 5904(d) to pursue a claim via the VA administrative process, and 38 U.S.C. § 511(a) requires the Secretary to make a decision on such a claim."). That is sufficient to establish our prospective jurisdiction for purposes of this writ. *See In re Tennant*, 359 F.3d at 529. Thus, we conclude that we may consider Mr. Wells's petition to protect our prospective jurisdiction through mandamus.

## C. Merits

Mr. Wells's primary argument is that the process by which the Secretary effectuates payments for fee agreements executed under section 5904(d)(2) is arbitrary and capricious; more pointedly, that the imposition of the 60-day period within that process exceeds VA's authority. *See* Amended Pet. at 7-8. For the reasons set forth below, the Court rejects Mr. Wells's argument and

holds that attorney fees resulting from direct pay agreements under section 5904(d)(2) are subject to the simultaneously contested claims rules laid out in section 7105A, including that statute's provision of a 60-day period for claimants to file an NOD upon mailing of notice of an adverse action. Accordingly, the Court will deny entitlement to an extraordinary writ of mandamus.

"The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Court*, 426 U.S. 394, 402 (1976). Three conditions must be met before the Court can issue a writ: (1) The petitioner must demonstrate the lack of adequate alternative means to obtain the desired relief, thus ensuring that the writ is not used as a substitute for the appeals process; (2) the petitioner must demonstrate a clear and indisputable right to the writ; and (3) the Court must be convinced, given the circumstances, that issuance of the writ is warranted. *See Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004). Failure to establish any of the three *Cheney* conditions may be sufficient to deny a petition. *See Amgen Inc. v. Hospira, Inc.*, 866 F.3d 1355, 1362-63 (Fed. Cir. 2017) (denying a petition for an extraordinary writ of mandamus for failure to satisfy the second *Cheney* condition without addressing the first and third conditions).

Central to Mr. Wells's argument is his contention that attorney fees subject to direct-pay fee agreements are not simultaneously contested claims: He argues that there is therefore no statutory or regulatory authority for the Secretary's imposition of a 60-day period into the disbursement of section 5904(d)(2) fees following successful representation. Amended Pet. at 7. He asserts that, because claimants have signed fee agreements defining the terms of representation, including the allocation of attorney fees to the representative, and because the fee agreements have been approved by VA, there is no reason to consider the claims "contested." Amended Pet. at 7-8; Oral Argument at 5:12-5:39, 7:23-8:06.

Congress has defined "simultaneously contested claims" as claims "where one is allowed and one rejected." 38 U.S.C. § 7105A(a). VA's regulation defines the term as "the situation in which allowance of one claim results in the disallowance of another claim involving the same benefit or the allowance of one claim results in the payment of a lesser benefit to another claimant," 38 C.F.R. § 20.3(l). VA's internal procedure manual expands upon this definition, describing a "simultaneously contested claim" as "a request for [a] benefit in which more than one person is party to a claim for the same benefit, such as claims for apportionment, attorney fee disagreements, or multiple parties filing for survivor's benefits." *Appeals and Reviews Manual*, M21-5, 4.2.a.

In *Mason*, the Federal Circuit deferred to the Secretary's interpretation of his regulation defining simultaneously contested claims. 743 F.3d at 1376. In relevant part, the Federal Circuit found that

> [d]irect payment of attorney fees under § 5904(d) results in lesser payment to veterans based on the award of past-due benefits. And direct fee requests concern contested claims: one by an attorney and one by a veteran, both directed at recovery of a portion of a payment of funds based on an award of past-due benefits.

*Id*. Under this framework, a simultaneously contested claim requires no initial indicia of disagreement or conflict; rather, the fact that both parties seek recovery from the same award, such that compensation of one party will necessarily limit the other party's compensation, is sufficient

to establish the "contest." *See also Scates v. Nicholson*, 282 F.3d 1362, 1369 (Fed. Cir. 2002) ("[S]ince the [VA's] payments to [the attorney] will be made from the twenty percent of [the veteran's] accrued benefits that [VA] withheld . . . [i]f less than twenty percent is paid to [the attorney], presumably the balance will be paid to [the veteran].") This Court has subsequently set aside Board decisions that erroneously found that attorney fee disputes do not involve simultaneously contested claims. *See, e.g.*, *Cornell v. McDonald*, 28 Vet.App. 297, 305 (2016). In other words, both the Federal Circuit and this Court have concluded that disputes involving the direct payment of attorney fees are simultaneously contested claims governed by section 7105A and § 14.636. It is therefore not possible to reconcile the definition of "contested" claim advanced by Mr. Wells with our existing caselaw. Moreover, as this Court noted in *Mason*, the simultaneously contested claim characterization for section 5904(d)(2) fees is favorable to both VA claimants and representatives because it shortens the appeals process in such instances. *See Mason*, 26 Vet.App. at 9.

In simultaneously contested claims where one party's claim is allowed and another party's claim is rejected, a claimant has 60 days from the date of mailing of notification of the determination to file an NOD. 38 U.S.C. § 7105A(a). And by suspending the disbursement of a section 5904(d)(2) payment until after the expiration of the 60-day fee-appeal period, VA avoids the prospect of overpaying either party to the other's detriment. Given that the Secretary's action in this regard aligns with section 7105A's statutory command concerning the time for filing of an NOD, the Secretary's policy of withholding direct payment of attorney fees for 60 days is not arbitrary, capricious, or not in accordance with law.

In the context of the simultaneously contested claims processing provisions, Mr. Wells has not established that the delay in processing the disbursement of a section 5904(d)(2) payment to a representative is so extraordinary as to amount to an arbitrary refusal to act. *See Costanza v. West*, 12 Vet.App. 133, 134 (1999) (per curiam order); *see also Bullock v. Brown*, 7 Vet.App. 69, 69 (1994) (per curiam order) ("The mere passage of time in reviewing a matter does not necessarily constitute the extraordinary circumstances requiring this Court to invoke its mandamus power. The delay involved, although frustrating to petitioner, must be unreasonable before a court will inject itself into an administrative agency's adjudicative process."). Indeed, it is not accurate to call the challenged 60-day period a "delay" in the traditional sense, as this period corresponds to the 60-day period explicitly contemplated by statute to permit an appeal of VA's attorney fee determination. *See* 38 U.S.C. § 7105A. Accordingly, the Court will deny the petition.

Notwithstanding the foregoing, the Court acknowledges Mr. Wells's additional argument that unpredictability in the disbursement of fees earned for successful representation poses a challenge for those who represent veterans, their dependents, and survivors before VA, and may constitute a barrier to the practice of veterans law. *See* Amended Pet. at 8. He contends that attorney fee claims are seldom, if ever, processed immediately after the 60-day period ends and that it is not unusual for payment to take weeks or even months. *See* Amended Pet. at 3; Mot. at 1-2, 4. The Secretary responds that difficulties related to the COVID-19 pandemic, as well as individual factual circumstances related to the different cases, account for the discrepancies in the timing of attorney fee payments. *See* Secretary's April 21, 2021, Resp. at 2; Secretary's Oct. 27, 2020, Resp. at 2.

This Court weighs six factors to determine if VA's "'delay is so egregious as to warrant mandamus.'" *Martin*, 891 F.3d at 1344 (quoting *Telecomms. Research & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70, 79 (D.C. Cir. 1984)). In *TRAC*, the U.S. Court of Appeals for the D.C. Circuit identified those six factors as follows:

(1) The time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also consider the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

750 F.2d at 80 (citations omitted). Beginning with the first and second *TRAC* factors, the "rule of reason" and, in this case, the absence of a specific congressional timetable for action, we have previously observed that the relevant consideration is the "particular agency action delayed, because it 'is reasonable that more complex and substantive agency actions take longer than purely ministerial ones.'" *Godsey v. Wilkie*, 31 Vet.App. 207, 226 (2019) (quoting *Martin*, 891 F.3d at 1345-46). The Court cannot say that the delay on VA's part, as articulated by Mr. Wells and documented in his Amended Petition, as to the distribution of section 5904(d)(2) payments to representatives is so egregious as to be unreasonable. Although the Court is cognizant of the difficulties that may result from the unpredictability associated with the disbursement of payments and the longer waiting period that sometimes occurs, as detailed above the delays apparently result from the agency's efforts to balance its obligations to preserve veterans' appellate rights and to ensure timely payment of representatives. *See also Martin*, 891 F.3d at 1346 (explaining that the "rule of reason" considers whether a delay is "based on complete inaction" as opposed to compliance with statutory duties). Congress has not provided a timetable or other indication of the speed with which it expects the agency to proceed with the disbursement of fees, although, at a minimum, the 60-day period to appeal the agency's attorney fee determination was congressionally considered. 38 U.S.C. § 7105A(a); *TRAC*, 750 F.2d at 80.

As to the remaining *TRAC* factors, although the third and fifth factors may weigh in Mr. Wells's favor, the fourth and sixth factors do not support a finding of unreasonableness. Some portion of the delay appears to be the unavoidable result of the "practical realities of the burdened veterans' benefits system." *Martin*, 891 F.3d at 1347; *see also Godsey*, 31 Vet.App. at 207 (noting that considerations relevant to the fourth factor include VA's limited resources, the fact that the agency is in a better position than the courts to evaluate how to use those resources, and the effect of expediting action on other claimants).

Finally, as to Mr. Wells's contention that VA should institute a waiver process to ease the burden of the 60-day period on the representative, three conditions must be met before the Court can issue a writ: (1) The petitioner must demonstrate the lack of adequate alternative means to obtain the desired relief, thus ensuring that the writ is not used as a substitute for the appeals

process; (2) the petitioner must demonstrate a clear and indisputable right to the writ; and (3) the Court must be convinced, given the circumstances, that issuance of the writ is warranted. *Cheney*, 542 U.S. at 380-81. As to Mr. Wells's right to the writ, the Court finds that his proposed waiver process is not only not required by the simultaneously contested claims processing rules outlined in section 7105A, but that the statute explicitly contemplates the 60-day period to benefit veterans or claimants, allowing them time to consider and potentially effectuate an appeal. 38 U.S.C. § 7105A(a). Furthermore, the Court credits the Secretary's persuasive arguments as to the legal and ethical challenges presented by a potential waiver process. *See* Secretary's Nov. 20, 2020, Resp. at 1-4. As a result, the Court cannot conclude that Mr. Wells has demonstrated a clear and indisputable right to the writ. *See Amgen Inc.*, 866 F.3d at 1362-63 (finding that failure to establish any of the three *Cheney* conditions may be sufficient to deny a petition). In any case, Mr. Wells is free to petition VA for rulemaking on this subject under 5 U.S.C. § 553(e). However, the requirements for extraordinary relief on the waiver issue have not been met. *See Cheney*, 542 U.S. at 380-81.

## IV. CONCLUSION

For the above reasons, the Court concludes that Mr. Wells has not satisfied the conditions that must be met prior to issuance of a writ.

Accordingly, upon consideration of the parties' filings, oral argument, and the governing law, it is

ORDERED that the May 3, 2022, motion to supplement the petition is granted. It is further

ORDERED that the petition for extraordinary relief in the nature of a writ of mandamus is DENIED.

DATED: June 23, 2022                                              PER CURIAM.