# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 24-3504

RICHARD HELLER, PETITIONER,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before MEREDITH, TOTH, and FALVEY, *Judges*.

## O R D E R

Like too many of our Nation's veterans, the petitioner—Mr. Richard Heller—struggles with suicidal ideation. Despite receiving extensive evidence of his ideation and past suicide attempt and suicidal behavior, the Board of Veterans' Appeals denied Mr. Heller's multiple requests for his case to be advanced on the docket (AOD). The Board did so with a conclusory finding that he had presented insufficient supporting medical evidence to show that his illness was serious or grave enough to warrant advancement.

Mr. Heller petitions us for a writ of mandamus, asking that we order VA to issue a decision or to advance his case. At minimum, he wants us to order the Board to provide him with a reasoned explanation for why his case won't be advanced. This is a request that this Court reluctantly denied in a single-judge decision. But with expanded arguments and some new case law, Mr. Heller asked that the Court reconsider its denial and convene a panel to consider the important questions raised by his petition. The Court agreed and convened a panel to help clarify whether and in what context we can review AOD determinations from the Board.

Like other jurisdictional questions, the limits of our review of AOD determinations involves complicated questions. Questions that are made more complicated when this Court is asked to deal with those issues through an extraordinary writ. We've tried to answer some of these questions before, most recently in *Hailey v. McDonough*, No. 22-3061, 2024 WL 3101294 (Vet. App. June 24, 2024). In *Hailey*, we ultimately did not resolve anything because the Board decided the underlying benefits claim before we could issue a decision, leaving nothing to AOD. That's already happened here to one of Mr. Heller's claims.

As to Mr. Heller's mental health claim, we conclude that a Board denial of an AOD motion is not a final Board decision and is thus not appealable to this Court. However, because Mr. Heller's claim for benefits could be the subject of a Board decision, we may issue a writ if VA's action (or inaction) unreasonably delays the claim or otherwise puts our jurisdiction at risk. That's the path Mr. Heller chose in this case. And that's the action we're going to take.

Under the circumstances presented here, we conclude that Mr. Heller has shown that a writ is warranted. We have the authority to compel action of the Secretary that is unlawfully withheld or unreasonably delayed. Mr. Heller has presented 10 records showing severe suicidal ideation, together with financial hardship due to unemployment, and an appeal pending for over two years without any VA action. What's more, Congress authorized the Board to advance appeals such as this, providing some indication of the speed with which it expects the Board to proceed if someone is seriously ill or has financial hardship, yet the Board has provided only generic responses to Mr. Heller's repeated requests for faster processing and his mental health condition appeal has sat untouched since July 2022. Although there is no "hard and fast rule with respect to the point in time at which a delay becomes unreasonable," *Martin v. O'Rourke*, 891 F.3d 1338, 1346 (Fed. Cir. 2018), we conclude, under the unique circumstances of this case, that the factors for assessing whether an Agency has unreasonably delayed action weigh in Mr. Heller's favor. Thus, we will grant Mr. Heller's petition and order the Board to decide his mental health condition appeal within 30 days.

## I. BACKGROUND

### A. Mr. Heller's AOD Attempts

Congress gave VA authority to advance cases on its docket. 38 U.S.C. § 7107(b). This includes situations when "the appellant is seriously ill or is under severe financial hardship." 38 U.S.C. § 7107(b)(3)(B). And VA implemented this authority in 38 C.F.R. § 20.800(c)(1), essentially parroting the enumerated statutory reasons for advancing a case, including when the appellant is seriously ill or is under severe financial hardship. 38 C.F.R. § 20.800(c)(1) (2024).

Plagued, as many veterans are, by a multi-year wait for a Board decision, and struggling with suicidal ideation, Mr. Heller sought to have his case advanced by the Board. Hoping to qualify based on serious illness, he submitted much evidence showing his difficulties with suicidal ideation. This includes:

(1) a January 2022 medical record showing suicidal ideation in the past month—a "[w]ish to die," Petition (Pet.), Attachment (Attach.) at 6 (also noting past suicidal behavior);

(2) an October 2021 administrative note stating "HIGH RISK FOR SUICIDE FLAG? Yes," *id.* at 8;

(3) an April 2021 case management record noting that he had put a box cutter to his wrist earlier that month and reported making that suicide gesture about 2 times a week, *id.* at 9 (stating that he regretted waking up each morning and thought about overdosing);

(4) a March 2021 crisis line note stating that Mr. Heller had suicidal ideation with a plan and means but no intent, *id.* at 12 (reporting that he had ideations of driving his car into another car); *see id.* at 11 (indicating that he was a moderate to low suicide risk);

2

(5) a November 2020 crisis line note showing that the veteran was having a difficult time resisting suicidal thoughts and that he hears voices daily, *id.* at 14 (reporting that he had active daily suicidal ideations and that he last attempted suicide 3 years ago by overdose, and the note stating that he was a moderate to high risk for suicide);

(6) an October 2020 crisis line note showing that Mr. Heller was a moderate to high risk for suicide, *id.* at 15;

(7) a suicide prevention follow-up stating that in July 2020 he experienced daily suicidal ideation with an intent but no plan, *id.* at 17 (reporting that he engaged in cutting to feel better);

(8) a May 2020 crisis line note showing that he reports dreaming of suicide every day, *id.* at 19-20 (noting a moderate to low risk of suicide);

(9) a December 2019 crisis line note stating suicidal ideation without a plan or intent, citing his children as his only reason for living, *id.* at 21-22 (noting a moderate to low suicide risk); and

(10) a September 2019 crisis line note in which the veteran reported putting a knife to his throat and that he regularly self-harms with a box cutter, *id.* at 24-25 (assessing a moderate to low risk of suicide).

The Board did not think that this warranted AOD status. And so, the Board rejected each of Mr. Heller's motions for advancement with substantially the same conclusory response: "In your case, the[re] . . . is . . . insufficient supporting medical evidence to demonstrate that you have an illness so serious or grave in nature that advancement is warranted." Pet. Attach. at 26 (March 2022 Board letter), 45 (May 2023 Board letter), 49 (November 2023 Board letter), 53 (January 2024 Board letter). Each time, the Board said nothing more about why Mr. Heller's risk of suicide did not qualify as a serious illness.

### B. May 2024 Petition

Mr. Heller, through counsel, petitioned for a writ of mandamus. He stated that, in March and July 2021, he filed Notices of Disagreement with VA's denial of service connection for a bilateral foot condition and a mental health condition, respectively. Pet. at 2. Mr. Heller noted that several times he moved to have the Board AOD his appeals. *Id.* at 2-4. To support his requests, he submitted medical records showing ongoing suicidal ideation with reported past suicide attempts as well as statements that he was unemployed. *Id.*, Attach. at 3-25, 43, 47, 51. But, as he tells it, the Board denied his motions with boilerplate conclusions that he hadn't shown a serious enough illness to deserve advancement. *Id.* at 7; *see id.*, Attach. at 26, 45, 49, 53.

Based on the Board's denials, Mr. Heller argued that a writ was necessary to compel the Board to advance his pending appeals on the docket and issue a decision, or at least to issue an explanation why advancement based on a serious illness is not warranted considering the medical

3

evidence of suicidal ideation. *Id.* at 1, 7. He also asked the Court to "hold, as a matter of law, that evidence of suicidal ideation is evidence of a serious illness that warrants advancement on the Board's docket under 38 C.F.R. § 20.800(c)(1)." *Id.* at 2 (emphasis omitted); *see id.* at 12.

To help us decide the petition, the Court ordered the Secretary to respond. Our order asked the Secretary to address Mr. Heller's assertions of delay in the Board's adjudication of the bilateral foot and mental health appeals; his contention that the Board appeared to advance the appeals on the hearing docket, but refused to expedite the issuance of a decision; and his argument that suicidal ideation is evidence of a serious illness under § 20.800(c)(1) that warrants advancement on the Board docket, including whether the Court can make such a finding and whether the Board's explanations denying the motions for advancement were sufficient. *Heller v. McDonough*, U.S. Vet. App. No. 24-3504 (May 28, 2024) (unpublished order).

Before the Secretary could respond, Mr. Heller told the Court that in a June 13, 2024, decision, the Board granted service connection for his bilateral foot condition. Petitioner's June 14, 2024, *Solze* Notice at 1. Thus, in responding to our order, the Secretary asserted that, because the Board had issued a decision granting service connection for the bilateral foot conditions, that part of the petition was now moot. Secretary's Response (Resp.) at 1.

Turning to the remaining controversy, the Secretary told us that the part of the petition dealing with the mental health claim should be denied. *Id.* at 1-2, 15. Despite his regret that Mr. Heller's appeal has been pending for two years since the Board hearing, the Secretary maintained that this was not unreasonable. *Id.* at 6-8; *see id.* (noting that the appeal is awaiting Board adjudication with many other appeals and issuing a writ would only force the Board to adjudicate his appeal before others who had been waiting longer). Seeking to dispel the notion of inconsistent advancement decisions, the Secretary stated that the Board merely scheduled the hearing in accordance with its usual workflow and availability under 38 C.F.R. § 20.704(a)(1). *Id.* at 14.

As for the AOD aspect, the Secretary asserted that this Court lacks jurisdiction to review the Board's denial of such a motion because it is not a final Board decision. *Id.* at 10. Relatedly, the Secretary maintained that, because the denial of advancement is not a final decision, the Board need not provide adequate reasons or bases for its determination as it must do in a final decision. *Id.* (stating that Mr. Heller "has failed to show how he is entitled to any further explanation than what [the Board] provided"). Finally, the Secretary contended that, "[w]hile . . . in general, suicidal ideation is a serious matter and he makes no attempt to diminish Petitioner's own symptoms and experience," the Secretary "does not concede that any use of the term 'suicide' or 'suicidal ideation' . . . means that the[] appeal must automatically be advanced pursuant to 38 C.F.R. § 20.800(c)(1)." *Id.* at 13; *see id.* at 12-13 (stating that § 20.800(c)(1) does not provide for advancement for suicidal ideation and the Court cannot rewrite the regulation, as well as that Mr. Heller's records also show instances of him denying suicidal ideation).

### C. July 2024 Single-Judge Order

After considering the parties' submissions, this Court issued a single-judge order dismissing as moot the part of the petition dealing with Mr. Heller's foot condition and denying relief for the mental health condition. *Heller v. McDonough*, No. 24-3504, 2024 WL 3417824, at

*2-6 (Vet. App. July 16, 2024). Noting that the petition involved two serious issues that plague our nation's veterans—a struggle with suicide and a slow, overburdened benefits system—we would still deny the petition because Mr. Heller failed to sufficiently show that he had a clear and indisputable right to the relief he sought and that a writ was needed to protect our prospective jurisdiction. *Id.* at *1.

D. July 2024 Motion for Reconsideration

Following the single-judge decision, Mr. Heller filed a motion for single-judge reconsideration or, in the alternative, panel review. He clarified his argument, expressly stating how a writ was necessary to protect the Court's potential jurisdiction. Motion for Reconsideration (MFR) at 4-7. Mr. Heller also stressed the need for a precedential panel decision addressing two questions: (1) "[w]hether evidence of suicidal ideation and prior suicide attempts can be sufficient to show that the claimant is 'seriously ill' and thus [qualifies] for advancement under 38 U.S.C. § 7107(b)(3)(B) and 38 C.F.R. § 20.80[0](c)(1)"; and (2) "[w]hether the Board's [r]ulings on other veterans' motions for advancement are decisions that the Court can look to in factually similar cases as persuasive evidence of the [A]gency's position or interpretation of a regulation." *Id.* at 7; *see id.* at 7-15.

To better consider the motion, the Court ordered the Secretary to respond. Perhaps unsurprisingly, the Secretary responded that we should deny the motion. Disputing all the points Mr. Heller raised in his motion, the Secretary also contended that the actual question of import to the petitioner and the Court is whether Board rulings on motions for advancement should be considered Board decisions subject to the Court's appellate review. Secretary's MFR Resp. at 9. As he sees it, no statute, regulation, or court opinion says that this Court has jurisdiction to review rulings on motions for advancement. *Id.* To make this point, the Secretary also sought to distinguish this case from our recent decision in *Cardoza v. McDonough*, 37 Vet.App. 407 (2024), explaining that the Board did not refuse to hear the petitioner's appeal and thus did not deny the benefit sought; rather, the Board refused to hear his appeal sooner. *Id.* at 9-11.

Because of the evolving nature of the dispute, the Court ordered Mr. Heller to reply to the Secretary's response. We instructed him to focus on the Secretary's question about the Court's jurisdiction to review Board rulings on motions for advancement and his assertion that no authority provides the Court with this jurisdiction. *Heller v. McDonough*, U.S. Vet. App. No. 24-3504 (Aug. 30, 2024) (unpublished order). Mr. Heller did so, asserting that this Court has jurisdiction to review Board AOD rulings. Petitioner's MFR Reply at 1. In his view, AOD rulings meet the definition of "decision" as described in *Encarnacion v. McDonough*, 36 Vet.App. 194, 200 (2023), and *Dojaquez v. McDonough*, 35 Vet.App. 423, 431 (2022) (per curiam order). *Id.* at 5. He explains that the benefit he seeks—advancement of his appeal on the Board's docket—is a benefit provided by Congress in section 7107(b) and that section "7107(b) is '*a law that affects the provision of benefits* by the Secretary.'" *Id.* (quoting 38 U.S.C. § 511(a)); *see id.* at 5-6. And he points out that, as much as the Secretary may disagree with *Cardoza*, that case is binding on the Court and its facts are analogous. *Id.* at 6-9.

With the benefit of further briefing, we agreed with Mr. Heller that the single-judge decision should be reconsidered. And seeing room to clarify our mandamus authority when it

5

comes to AOD requests, we agreed to address this petition as a panel. *Heller v. McDonough*, U.S. Vet. App. No. 24-3504 (Sept. 25, 2024) (unpublished order).

## II. ANALYSIS

### A. Foot Condition Claims

Part of our task is simple. The part of the petition requesting a writ because of the foot condition claims remains moot. As the single-judge order previously found, VA provided the relief that Mr. Heller requested in the petition. Thus, this part of the petition is moot, and the Court will dismiss it. *See Bond v. Derwinski*, 2 Vet.App. 376, 377 (1992) (per curiam); *see also Mokal v. Derwinski*, 1 Vet.App. 12, 13-15 (1990) (noting that this Court adheres to the case-or-controversy jurisdictional requirements imposed by Article III of the U.S. Constitution). But with this out of the way, we have a much more complicated issue to resolve—is review of Board AOD denials within our jurisdiction?

### B. Mandamus Legal Framework

Like all courts created by Congress, we're limited to the jurisdiction granted by Congress. *See Skaar v. Wilkie*, 32 Vet.App. 156, 180 (2019) (en banc order), *vacated and remanded sub nom. Skaar v. McDonough*, 48 F.4th 1323 (Fed. Cir. 2022); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988) ("'Courts created by statute can have no jurisdiction but such as the statute confers.'" (quoting *Sheldon v. Sill*, 49 U.S. 441, 449 (1850))). For us, that jurisdiction is limited to reviewing final decisions of the Board. 38 U.S.C. § 7252(a).

That said, with the All Writs Act (AWA), Congress also empowered courts (including this Court) to issue writs in aid of their statutory jurisdiction. *See* 28 U.S.C. § 1651(a). In exercising this authority, we must be mindful that it is not a separate source of jurisdiction. Instead, we can use it to fill gaps in our appellate jurisdiction when, absent a writ, our prospective jurisdiction would be frustrated. *See Love v. McDonough*, 35 Vet.App. 336, 342 (2022) (per curiam order), *aff'd*, 100 F.4th 1388 (Fed. Cir. 2024); *see also Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943) (noting that the "function of mandamus in aid of appellate jurisdiction is to remove obstacles to appeal"). What this means is that we can't use the AWA to independently decide legal disputes that don't facilitate a Board decision. *See Love*, 35 Vet.App. at 342. But we can use our AWA authority to remedy unreasonable delay. *See Martin*, 891 F.3d at 1343 (noting that this Court is empowered to "'compel action of the Secretary unlawfully withheld or unreasonably delayed'" (quoting 38 U.S.C. § 7261(a)(2))).

Before we may issue a writ, we need to make sure three conditions are met: (1) a petitioner must show a lack of adequate alternative means to obtain the desired relief, thus ensuring that the writ is not used to replace the appeals process; (2) a petitioner must show a clear and indisputable right to the writ; and (3) the Court must be convinced, given the circumstances, that issuing the writ is warranted. *See Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004). And in the delay

context, our consideration is also informed by the six "*TRAC* factors." *Martin*, 891 F.3d at 1344 (citing *Telecomms. Rsch. & Action Ctr. v. FCC* (*TRAC*), 750 F.2d 70, 79 (D.C. Cir. 1984)).[1]

### C. Application to Mr. Heller's Petition

#### *1. A Lack of Adequate Alternative Means*

We thus turn to the first question—does Mr. Heller have another way to get his desired relief? *See Cheney*, 542 U.S. at 380-81. With the Board unmoved by evidence of suicidal ideation and financial hardship, this question comes down to whether Mr. Heller can appeal the Board's AOD denial. And for someone who wants a writ of mandamus, Mr. Heller curiously appears to argue that an AOD denial is an appealable Board decision. *See* Petitioner's MFR at 10-15 (seeming to argue that the Court should hold that a Board ruling on an AOD motion is a decision); Petitioner's MFR Reply at 1-8 (asserting that Board rulings on motions for AOD are final decisions on whether a claimant is entitled to the benefit of advancement under section 7107(b)). The thing is, if an AOD denial is an appealable decision, then Mr. Heller has an adequate alternative means to challenge the decision—appeal the Board's denials. *See Wolfe v. McDonough*, 28 F.4th 1348, 1357 (Fed. Cir. 2022) ("It is well established that mandamus is unavailable when there is an adequate remedy by appeal.").

But we find that the Board's denial of an AOD motion is *not* an appealable decision. To explain why, we return to our statutory appellate jurisdiction.

"This Court has exclusive jurisdiction to review decisions from the Board . . . that are adverse to the appellant and are final—that is, they are not tentative or interlocutory in nature but represent the culmination of the Agency's consideration of an issue." *Cooper v. McDonough*, __ Vet.App. __, __, 2024 WL 4224581, at *1 (Sept. 18, 2024) (per curiam order) (citing 38 U.S.C. §§ 7252(a), 7266(a)), *appeal docketed*, No. 2025-1166 (Fed. Cir. Nov. 12, 2024). "[G]overning caselaw has consistently interpreted the phrase 'decision of the Board' in section 7252 as involving an adjudication with respect to the grant or denial of benefits." *Id.* at *5 (citing *Maggitt v. West*, 202 F.3d 1370, 1376 (Fed. Cir. 2000)). For this reason, in *Cooper* we found that a remand was not an appealable Board decision because it did not involve the grant or denial of a benefit. *Id.* at *6; *see id.* (concluding that the passage of the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, 131 Stat. 1105 (Aug 23, 2017), and its changes to VA's administrative

---

[1] These factors are as follows:

> (1) [T]he time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude to hold that agency action is unreasonably delayed."

750 F.2d at 80 (citations omitted).

7

processes did not alter the Court's jurisdiction under sections 7252 and 7266 and thus did not alter "longstanding caselaw setting out what constitutes a final decision").

Similarly, in *Clark v. McDonough*, 35 Vet.App. 317, 322-23 (2022) (per curiam order), we held that we lacked jurisdiction to review the Board's purported denial of Mrs. Clark's motion to waive her right to the duty to assist because such a ruling on a nondispositive motion did not by itself constitute a denial of benefits. And, in *Dojaquez*, 35 Vet.App. at 431-32, we concluded that a Board letter informing a claimant that his case is subject to the procedures for contested claims did not constitute "a decision on the benefit sought"—entitlement to additional attorney fees—and thus the Board's "determination by itself" did not fall within the Court's jurisdiction under section 7252(a) and controlling precedent.

By contrast, in *Cardoza* (the decision Mr. Heller invokes), the Court found that a Board letter notifying the appellant that VA would not accept his Notice of Disagreement seeking an earlier effective date for his service-connected condition was an appealable Board decision because it denied a benefit—the earlier effective date. 37 Vet.App. at 414. When VA extinguished the earlier effective date appeal, the veteran's journey to more benefits stopped. *See id.* at 411.

Considering the caselaw above, we conclude that the denial of a motion for AOD does not involve the grant or denial of a benefit. VA's AOD denials are not a denial of Mr. Heller's potential benefits—that is, service connection for a mental health condition. Likewise, it does not address an essential element of the claim for benefits. *But see Dojaquez*, 35 Vet.App. at 432, n.7 (recognizing that, when the Board determines that a claimant has not established a certain status, and the claimant thus cannot establish entitlement to the claimed benefit, such decisions are dispositive of the pending claim for benefits and may be appealed to the Court). Instead, the AOD denials simply prevented him from moving up on the docket and having the Board decide his service-connection claim sooner.

What's more, unlike VA's denial of benefits or closing of an appeal, there's no indication here that an AOD denial cannot be revisited at any time without additional legal hurdles or that it has an impact on entitlement to the benefits sought. As our bottom-line disposition shows, we agree that Mr. Heller has exhausted his options of trying to satisfy the Board's unexplained AOD criteria. VA is not changing its mind about his AOD status. But that doesn't morph the interlocutory procedural AOD determination into a Board decision that represents the culmination of the Board's consideration of Mr. Heller's benefits claim. *See Cooper*, 2024 WL 4224581, at *1; *cf. id.* at *5 (recognizing that the "Court has jurisdiction to review adverse procedural rulings by the Board, provided the determination is final and is attendant to the denial of a claim" (citing *Ferko v. McDonough*, 37 Vet.App. 262 (2024) (en banc))).

For these reasons, we find that an AOD denial is not a final Board decision. This means that it can't be fixed with an appeal. And it also means that a petition continues to be the way to aid our prospective jurisdiction by compelling action unlawfully withheld or unreasonably delayed. *See Cardoza*, 37 Vet.App. at 420 (Falvey, J., dissenting). Because that's what Mr. Heller did, we can continue to decide whether a writ of mandamus is warranted.

8

*2. A Clear and Indisputable Right*

Among other things, Mr. Heller argues that the Board's refusal to advance his appeal on its docket based on suicidal ideation makes the delay he's suffering unreasonable. Pet. at 8. The petitioner's logic is intuitive. The law—section 7107(b)(3)(B) or § 20.800(c)(1)—allows the Board to move his case faster through the appellate process under certain circumstances; he believes his circumstances justify advancement; and yet the Board, without any meaningful explanation, is not advancing his appeal—which is unreasonable—and his case is delayed as a result. Thus, unreasonable delay.

As we've said, unreasonable delay is something we can remedy through a writ. And this Court has issued writs of mandamus when VA's failure to take an action unreasonably delayed petitioners' claims from even reaching the Board. *See Godsey v. Wilkie*, 31 Vet.App. 207 (2019) (per curiam order). We thus turn to the six *TRAC* factors relevant to claims of unreasonable delay.

As to the first *TRAC* factor, the Court must "'look at the particular agency action for which unreasonable delay is alleged' and evaluate the reasonableness of the delay given the specific factual circumstances before the Court." *Monk v. Wilkie*, 32 Vet.App. 87, 102 (2019) (en banc order) (quoting *Martin*, 891 F.3d at 1345), *aff'd in part, dismissed in part sub nom. Monk v. Tran*, 843 F. App'x 275 (Fed. Cir. 2021). The second factor "is often related to the first factor because a congressional 'timetable or other indication of the speed with which [Congress] expects the agency to proceed may supply content for the rule of reason.'" *Id.* at 105 (quoting *Martin*, 891 F.3d at 1345).

Although Congress did not establish a deadline for the Board to decide appeals, Congress created a statute to allow the Board to advance cases "for cause shown," including when an "appellant is seriously ill or is under severe financial hardship." 38 U.S.C. § 7107(b)(3)(B); *see Martin*, 891 F.3d at 1346 (recognizing that the statutory instruction that remanded cases receive expedited treatment may inform the "rule of reason"). And, as the Secretary concedes, "evidence of suicidal ideation and past suicide attempts *can* be evidence of serious illness such that advancement on the Board's docket could be warranted." Secretary's MFR Resp. at 5.

As reflected above, the petitioner presented several records showing a severe level of suicidal ideation. *See*, *e.g.*, Pet., Attach. at 6 (January 2022 medical record noting a "[w]ish to die"); *id.* at 8 (October 2021 record stating that the veteran was at a high risk for suicide); *id.* at 9 (April 2021 record noting that Mr. Heller had put a box cutter to his wrist and reported making that suicide gesture about 2 times a week); *id.* at 14-15 (October and November 2020 crisis line notes showing that he was a moderate to high risk for suicide). These records depict several years of suicidal ideation, at times with a plan or an intent, and with a history of a past attempt and suicidal behavior. Mr. Heller has also experienced ongoing unemployment on top of his continuing severe suicidal ideations, *id.* at 3 (in March 2022, the veteran informing the Board that he had become unemployed), and his representative before the Agency relayed to the Board how Mr. Heller's communications have become "more desperate," *id.* at 43 (providing these examples, "'Save my life!!'"; "'I'm barely getting by'"; "'I'm too depressed to do almost anything'"; "'It's killing me mentally'"; and "'I need this nightmare to finally come to an end'").

9

But Mr. Heller hasn't been aided by advancement on the docket despite his ill health and financial difficulties, the Board hasn't indicated why his situation does not warrant advancement, and the Secretary does not dispute that VA has not acted on his appeal for more than two years. *See Martin*, 891 F.3d at 1346 ("The 'rule of reason' analysis may . . . consider whether the delays complained of are based on complete inaction by the VA, or whether the delays are due in part to the VA's statutory duty to assist a claimant in developing his or her case."); *see also Muwekna Tribe v. Babbitt*, 133 F. Supp. 2d 30, 36 (D.D.C. 2000) (stating that courts "must consider the agency's justification for the pace of its decision" and must determine whether "[t]he pace at which the agency proceeds . . . follow[s] a rule of reason").

Although we recognize that "a two-year delay may be unreasonable in one case, and it may not be in another," *Martin*, 891 F.3d at 1346, we conclude under the circumstances here that the Board's complete failure to act on Mr. Heller's mental health condition appeal is not governed by a rule of reason capable of accounting for the delay in this particular case. And therefore, the first and second *TRAC* factors weigh in his favor.

Because they focus on the veteran's individual interest and often overlap, we consider the third and fifth *TRAC* factors together. *See Martin*, 891 F.3d at 1346. The third factor considers delays "'less tolerable when human health and welfare are at stake.'" *Id.* (quoting *TRAC*, 750 F.2d at 80). Similarly, the fifth factor "considers the nature and extent of the interests prejudiced by the delay." *Id.* Because "[v]eterans' disability claims always involve human health and welfare," these factors typically weigh in favor of finding the alleged delay less tolerable. And here, considering the effect of the delay on Mr. Heller, including evidence of severe suicidal ideation, with a prior attempt, unemployment, and his more desperate messages as his appeal languishes, we conclude that these factors weigh heavily in favor of finding unreasonable delay. *See id.* at 1347 (explaining that this "Court may find that [the fifth factor] more strongly favors a finding of unreasonable delay where it is evident that a particular veteran is wholly dependent on the requested disability benefits"); *see also In re A Cmty. Voice*, 878 F.3d 779, 787 (9th Cir. 2017) (referring to the threat to human welfare and concluding that "children exposed to lead poisoning due to the failure of [the Environmental Protection Agency (EPA)] to act are severely prejudiced by EPA's delay, and the fifth factor thus favors issuance of the writ").

The fourth *TRAC* factor requires the Court to "consider the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Here, Mr. Heller presented considerable evidence of the kind that Congress indicated may warrant earlier consideration and determination, and the Secretary, in June 2024, indicated that the Board would be deciding his mental health condition appeal in the "near future." Secretary's Resp. at 2 n.1. Under these circumstances, we are not convinced that expediting a decision in Mr. Heller's appeal would have a considerable effect on the Agency or other similarly situated veterans. *Cf. In re A Cmty. Voice*, 878 F.3d at 787 ("Even assuming that EPA has numerous competing priorities under the fourth factor and has acted in good faith under the sixth factor, the clear balance of the *TRAC* factors favors issuance of the writ."). And so, this factor also weighs in his favor.

Finally, regarding the sixth *TRAC* factor, the "Court need not find 'any impropriety lurking behind agency lassitude' to hold that agency action is unreasonably delayed." *Martin*, 891 F.3d at 1348 (quoting *TRAC*, 750 F.2d at 80). In sum, we conclude that the *TRAC* factors clearly favor

10

Mr. Heller; the delay in deciding his mental health condition appeal has been unreasonable and he has thus established a clear and indisputable right to a writ.

### *3. A Writ is Warranted*

But it is not enough that Mr. Heller has shown a clear and indisputable right to the writ. The Court must also be convinced that issuing the writ is warranted under the circumstances. *See Cheney*, 542 U.S. at 380-81. We're mindful that "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 426 U.S. 394, 402 (1976). And here there is such an extraordinary situation. We want to be clear that we are not finding that any evidence of suicidal ideation warrants a writ. Mr. Heller has numerous records showing a moderate to high risk of suicide, sometimes with a plan, means, or intent, and with reports of putting a box cutter to his wrist and a past suicide attempt. And this is compounded by Mr. Heller being unemployed. Again, we are not finding that financial difficulties always reflect an extraordinary situation. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 507 (2023) (Jackson, J., concurring) ("Other cases presenting different allegations and different records may lead to different conclusions."). But with these hardships, Mr. Heller has been waiting for a Board decision without any Agency action since his July 2022 Board hearing, with several AOD denials containing no explanation for the denial and more desperate messages as his appeal continues to languish. Sure, the Secretary suggested in June 2024 that the Board would issue a decision on his claim soon. *See* Secretary's Resp. at 2 n.1. And we recognize that the Secretary finds it "regrettable" that Mr. Heller's appeal has been pending for over two years. *Id.* at 6. But it's been several months since the Secretary's hopeful suggestion that a decision was near. And so, we are convinced, under the circumstances of this case, that issuance of a writ is warranted.

### III. CONCLUSION

Troubled by suicidal ideation and financial difficulties, Mr. Heller asked the Board four times to advance his case on the docket; Congress said the Board could do so when a veteran has a serious illness or financial hardship. Each time, he was met with conclusory denials. With no likelihood of success at the Board, and an AOD appeal off the table, we find that Mr. Heller has shown he lacks adequate alternate means to have his case decided more quickly. *See Cheney*, 542 U.S. at 380-81. And because Mr. Heller has multiple records showing severe suicidal ideation, at times with a plan or an intent and an assessment of moderate to high risk of suicide, in addition to unemployment and a long period with no VA action on his appeal, we conclude that the *TRAC* factors clearly favor Mr. Heller and that he has shown a clear and indisputable right to a writ. *See id.* Finally, although mandamus is a drastic remedy, the Court is convinced that issuing a writ is warranted here. Thus, the Court will grant Mr. Heller's petition and order the Board to issue a decision within 30 days of the date of this order.

Based on the above, it is

ORDERED that the part of Mr. Heller's May 22, 2024, petition concerning a bilateral foot condition is DISMISSED as moot. It is also

ORDERED that the part of Mr. Heller's petition concerning his mental health condition is GRANTED. It is also

ORDERED that the Board issue a decision within 30 days of the date of this order.

DATED: November 21, 2024                                   PER CURIAM.

12